[Nos. 29672-8-I; 31052-6-I.   Division One.   October 11, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MARTIN G. HOBBS, *Appellant.*

---

*Jeff Ellis* of *The Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert A. Knief* and *John L. Belatti, Deputies,* for respondent.

KENNEDY, J. — Appellant Martin Hobbs appeals his conviction of second degree assault with a deadly weapon, claiming (1) insufficient evidence to prove that the assault took place in King County, and (2) error by the trial court in modifying the "to convict" jury instruction after jury deliberations had begun. Finding actual prejudice in the belated modification of the instruction, we reverse and remand for a new trial.

FACTS

1. Procedural Facts

Hobbs was charged by information on April 24, 1991, with rape in the second degree, contrary to RCW 9A.44.050(1)(a) (count 1), and assault in the second degree with a deadly weapon, contrary to RCW 9A.36.021(1)(c) and RCW 9.94A-.125 (count 2). Jury trial took place on October 10-18, 1991.

The State and Hobbs both submitted proposed "to convict" instructions which included as an element of the crime that the act charged in count 2 occurred in King County, Washington. Accordingly, the court instructed the jury that

it would have to find that the act occurred in King County, in order to convict Hobbs. Neither party excepted to that instruction. After the jury had been instructed, and during closing argument, defense counsel argued that the State had failed to establish beyond a reasonable doubt that the assault occurred in King County.

Jury deliberations began on October 16, 1991. On October 18, prior to any verdict, the State moved to amend the information and to modify the "to convict" instruction to delete "King County" and insert "State of Washington" as the place where the act occurred. Defense counsel objected. She stated that she became aware during trial that there was an issue concerning where the assault had allegedly occurred, and made a strategic choice not to pursue the inconsistency between what the victim said at trial and what she had earlier said to the defense investigator.

The court allowed the amendment to the information and modified the jury instruction to delete the reference to King County and include as an element that the act charged in count 2 occurred in the state of Washington. The court then granted defense counsel's request for reargument before the jury. The defendant's motion for a mistrial was denied.

On October 18, 1991, the jury found Hobbs guilty of second degree assault as charged in count 2. A mistrial was declared on the rape count, as the jury was unable to reach a verdict on that count. Hobbs filed a motion for a mistrial, to arrest judgment and for a new trial as to the assault charge. The court denied the motions. This appeal followed.[1]

---

[1] On December 5, 1991, Hobbs filed a notice for discretionary review of the trial court's denial of his posttrial motions. This notice was given cause number 29672-8 by this court. A commissioner of this court ruled, on February 12, 1992, that the notice for discretionary review would be treated as a notice of appeal. Hobbs was sentenced on June 24, 1992. He then filed a notice of appeal on July 13, 1992, and was given cause number 31052-6. Both appeals were consolidated under cause number 29672-8.

Hobbs filed a pro se supplemental brief on January 21, 1993. This decision renders the pro se issues moot. Accordingly, we do not address Hobbs' pro se brief.

### 2. Substantive Facts

On or about March 30, 1991, the victim, K.R., went out drinking with Hobbs and his friend. Ms. R. testified that Hobbs was drinking and driving, and that he knocked over stop signs, a school sign and several other signs as he drove.

Ms. R. testified that the three first drove to Tacoma and then drove down Highway 512 to Interstate 5, headed north and ended up in Federal Way. Ms. R. testified that immediately after they turned north on Interstate 5, Hobbs pulled a gun from underneath the seat and began waving it at another car on the highway. Hobbs attempted to take aim at the car in order to shoot out its tires.

Ms. R. testified that she then told Hobbs to let her drive and that he "turned around and looked at me and put the gun right into my face, well, about two inches from my face, and said, 'Do you really want to drive that bad now?' ". Ms. R. testified that the incident happened as Hobbs was driving from Spanaway to Federal Way, right after they had entered the freeway, and that Hobbs held the gun on her for 5 to 10 seconds. The defense attorney asked Ms. R. if she remembered telling a defense investigator that Hobbs held the gun on her all the way from Spanaway to Federal Way. Ms. R. answered no.

The trio went to the apartment of Hobbs' friend, located in Federal Way. Ms. R. testified that Hobbs assaulted her sexually and physically there.

### DISCUSSION
### Amendment of the Jury Instruction

The dispositive issue here is whether it was reversible error for the trial court to alter the "to convict" instruction after the jury deliberations had begun, to delete the "venue element" which the State undertook to prove.[2]

Hobbs correctly points out that the State assumed the burden of proving that the crime occurred in King County

---

[2]Although Hobbs asks us to rule that this may *never* be done, we need not reach that issue. We find that actual prejudice resulted from the belated correction and it was, accordingly, an abuse of discretion to grant the motion to reinstruct the jury.

because the State requested that the court include King County as a necessary element in the "to convict" instruction given to the jury.

■ Venue is not an element of the crime here. *State v. McCorkell*, 63 Wn. App. 798, 800, 822 P.2d 795, *review denied*, 119 Wn.2d 1004 (1992); *State v. Hardamon*, 29 Wn.2d 182, 188, 186 P.2d 634 (1947). *But see State v. Marino*, 100 Wn.2d 719, 727, 674 P.2d 171 (1984). However, where the trial court, "at the request of the State's attorney, proceeds to incorporate the unnecessary element in the instructional language . . .", then the State assumes the burden of proving that element. *State v. Worland*, 20 Wn. App. 559, 566, 582 P.2d 539 (1978). *See also State v. Hawthorne*, 48 Wn. App. 23, 27, 737 P.2d 717 (1987).

The State argues that, when the trial court properly allowed amendment of the information pursuant to CrR 2.1(e),[3] it found it "necessary" to give further jury instructions. This does not necessarily follow. If there is surplusage in the information, that surplusage need not be carried over into the "to convict" instruction or proved beyond a reasonable doubt if there is a bench trial. *See, e.g., Hawthorne*, 48 Wn. App. at 27; *State v. Plano*, 67 Wn. App. 674, 679, 838 P.2d 1145 (1992).[4]

---

[3]CrR 2.1(e) provides:

"The court may permit any information or bill of particulars to be amended at any time *before verdict or finding* if substantial rights of the defendant are not prejudiced." (Italics ours.)

*See also State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987), holding that "[a] criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." However, the *Pelkey* court also noted that "[m]idtrial amendment of a criminal information has been allowed where the amendment merely specified a different manner of committing the crime originally charged". *Pelkey*, at 490.

Here, the late amendment of the information was not barred by *Pelkey* as the amendment simply alleged that the same crime occurred in the same way, in "Washington State", rather than "King County".

[4]Although Hobbs objected below to the amendment of the information, he does not assign error to that amendment, on appeal. Accordingly, we need not decide whether the court's grant of the motion to amend the information was an abuse of discretion under CrR 2.1(e). That issue is not dispositive of the jury instruction issue, in any event.

424

Next, the State begs the question by arguing that the defense did not challenge venue when it became apparent (for the first time during the testimony of the alleged victim, Ms. R.) that there was a venue issue. However, Hobbs was not seeking a *change* of venue. He was challenging the State's right to change the "law of the case" after jury deliberations were already under way.

Hobbs' counsel candidly admitted below and candidly admits on appeal that she became aware, during Ms. R.'s testimony, which was different from her pretrial statements to the defense investigator, that the State was not going to be able to prove King County venue beyond a reasonable doubt, even though it had submitted a proposed instruction saying it intended to do so. Defense counsel then made a strategical decision not to try to impeach Ms. R. on this venue issue. Instead, she asked one question on that issue during cross examination and then went on to other matters. During closing argument, the defense raised the issue again as its, by then, primary theory for dismissal of the assault charge. The State still had not recognized its venue problem and had submitted the "to convict" instruction as first proposed.

The State now characterizes this defense strategy as "lying in the weeds" on a "technicality". We disagree. This was a valid defense strategy under these circumstances. Defense counsel is an advocate for her client, not a "law clerk" for the prosecutor.

The State also argues that the fact that this strategy eventually backfired is not grounds for reversal. If the State had caught its error before its own proposed instruction became the law of the case we might possibly agree. At least, the State would have a stronger argument. Here, however, the jury had deliberated for more than a day before the State attempted to correct its error by asking the court to "correct" the law of the case.

Supplemental instructions "should not go beyond matters that either had been, or could have been, argued to the jury." *State v. Ransom*, 56 Wn. App. 712, 714, 785 P.2d 469

(1990). Although the defense was allowed to reargue, there was no opportunity, here, to rethink its cross examination strategy, a strategy based on the State's earlier error. We believe that the trial court had two permissible remedies here: (1) to hold the State to its own election or (2) to declare a mistrial.

The defense asks us, in the alternative, to rule as a matter of law that the erroneous "to convict" instruction became the law of the case once the jury deliberations began — and that *dismissal* is now the remedy, since there was a failure of proof as to the venue "element" which the State undertook to prove, and failed to prove.

Because the supposed element was indeed surplusage, however, we believe the better remedy is to declare a mistrial and allow the case to be tried anew before a jury which is properly instructed in the first instance and at a trial where the defense theory of the case may be planned and executed with the correct law of the case in mind. The defense seeks this relief in the alternative. We so order.

FORREST, J., concurs.

GROSSE, J. (dissenting) — While venue is considered a constitutional right, it is neither an element of a crime nor a matter of jurisdiction, and the issue of venue is waived by a defendant if not challenged prior to the time jeopardy attaches. *See State v. McCorkell*, 63 Wn. App. 798, 822 P.2d 795, *review denied*, 119 Wn.2d 1004 (1992). Here, venue was not at issue until the victim's testimony, or lack thereof, and was not raised by the defense until closing argument. I cannot agree that "the law of the case" overcomes the waiver. The court had jurisdiction and did not abuse its discretion by amending the erroneous instruction. The defense was not prejudiced; it was allowed to reargue the case.