# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,           )
                               )        No. 67627-0-I
            Respondent,        )
                               )        ORDER GRANTING
        v.                     )        RESPONDENT'S MOTION
                               )        FOR RECONSIDERATION
DONALD L. CALVIN               )        AND AMENDING OPINION
                               )
            Appellant.         )
                               )

The respondent, State of Washington, filed a motion for reconsideration. The appellant, Donald Calvin, has filed an answer. A panel of the court has determined that the motion should be granted, and the published opinion filed May 28, 2013 shall be amended. Now, therefore, it is hereby

**ORDERED** that the motion is granted; it is further

**ORDERED** that the published opinion filed May 28, 2013 be amended as follows:

**DELETE** the last two sentences of the first paragraph on page 1 that read:

We affirm his convictions. Because there is no evidence to support the trial court's finding that Calvin has the ability to pay court costs and the record does not otherwise show that the trial court considered Calvin's financial resources, we remand for the trial court to strike the finding and the imposition of court costs.

**REPLACE** those sentences with the following sentence:

We affirm.

**DELETE** section V. Legal Financial Obligations, which begins on page 20 and ends on page 22, in its entirety.

**REPLACE** that section with the following:

V.     Legal Financial Obligations

The trial court ordered Calvin to pay a total of $1,300 in legal financial obligations (LFOs), including $450 in court costs.  It also entered a boilerplate finding stating that had the ability to pay LFOs:

The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change.  The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

Calvin challenges the imposition of $450 in court costs, arguing that the boilerplate finding is not supported by evidence, and that the trial court was required to determine whether he had the ability to pay before ordering the payment of costs.  The State argues that Calvin did not preserve this issue for review and cannot raise it for the first time on appeal.  We agree with the State.

Under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them.  In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."  Our Supreme Court has made several things clear about this

statute. First, the sentencing court's consideration of the defendant's ability to pay is not constitutionally required. State v. Blank, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997) ("the Constitution does not require an inquiry into ability to pay at the time of sentencing"). Accordingly, the issue raised by Calvin is not one of constitutional magnitude that can be raised for the first time on appeal under RAP 2.5(a).

Second, the imposition of costs under this statute is a factual matter "within the trial court's discretion." State v. Curry, 118 Wn.2d 911, 916, 829 P.2d 166 (1992). Failure to identify a factual dispute or to object to a discretionary determination at sentencing waives associated errors on appeal. In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874-75, 50 P.3d 618 (2002); In re Pers. Restraint of Shale, 160 Wn.2d 489, 494-95, 158 P.3d 588 (2007). Calvin's failure to object below thus precludes review.

Third, "[n]either the statute nor the constitution requires a sentencing court to enter formal, specific findings" regarding a defendant's ability to pay. Curry, 118 Wn.2d at 916. The boilerplate finding is therefore unnecessary surplusage. If a challenge to the court's discretion were properly before us, striking the boilerplate finding would not require reversal of the court's discretionary decision unless the record affirmatively showed that the defendant had an *inability* to pay both at present and in the future.

Finally, even if the finding were properly before us for review, we would conclude that it is not clearly erroneous.[1] Calvin testified to his high school

3

education, some technical training, and his past employment as a carpenter, including a brief time in the union. Calvin also had retained, not appointed, counsel at trial. These facts are sufficient to support the challenged finding under the clearly erroneous standard.

Calvin also challenges the imposition of a $250 fine pursuant to RCW 9A.20.021. That provision, however, merely enumerates the maximum sentence for Calvin's convictions. It does not contain a requirement that the court even take a defendant's financial resources into account before imposing a fine, let alone enter findings. Calvin has not articulated any basis for striking the fine.

------------------------------------

[1] We review the trial court's decision to impose discretionary financial obligations under the clearly erroneous standard. State v. Baldwin, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646, 837 P.2d 646 (1991). "A finding of fact is clearly erroneous when, although there is some evidence to support it, review of all of the evidence leads to a 'definite and firm conviction that a mistake has been committed.'" Schryvers v. Coulee Cmty. Hosp., 138 Wn. App. 648, 654, 158 P.3d 113 (2007) (quoting Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

**DELETE** the first paragraph on page 24 with reads:

We affirm Calvin's convictions and remand for the trial court to strike the finding that Calvin has the present or future ability to pay LFOs and the imposition of $450 in court costs.

4

No. 67627-0-I/5

**REPLACE** that paragraph with the following paragraph:

We affirm.

DATED this _2nd_ day of _October_, 2013.

WE CONCUR:

_Appelwick, J_

_Spearman, A.C.J._

_Grosse, J_

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 OCT 22  PH 4: 01

5

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,    )
    )   No. 67627-0-I
    Respondent,    )
    )   DIVISION ONE
    v.    )
    )   PUBLISHED OPINION
DONALD L. CALVIN    )
    )
    Appellant.    )   FILED: May 28, 2013
    )

APPELWICK, J. — After an altercation with a park ranger, Calvin was convicted of assault in the third degree and resisting arrest. He argues that his convictions are not supported by substantial evidence, that he was entitled to a self-defense instruction, that he was prejudiced by prosecutorial misconduct, that the trial court erred by correcting and replacing an instruction during jury deliberations, and that there is no evidence to support a finding that he has the ability to pay legal financial obligations. We affirm his convictions. Because there is no evidence to support the trial court's finding that Calvin has the ability to pay court costs and the record does not otherwise show that the trial court considered Calvin's financial resources, we remand for the trial court to strike the finding and the imposition of court costs.

## FACTS

In April 2010, Alexander Moularas was a park ranger at Larrabee State Park in Bellingham. The park closes to day users half an hour after sunset. On April 10, Ranger Moularas closed the gate at 8:30 p.m. At around 9:15 p.m., he discovered a car idling in front of the closed gate. Ranger Moularas was driving a dark blue truck with a white stripe across it, a park shield on the door, and a law enforcement light bar on top. He was wearing his uniform

When he pulled up, Ranger Moularas saw Donald Calvin standing outside of his idling vehicle. Ranger Moularas rolled his window down, shut off the ignition, and announced himself as a ranger. Calvin was aggravated, said that he just wanted to take a shower, and asked if Ranger Moularas was going to let him in. Ranger Moularas informed Calvin that the facilities were closed at that point and only available to campers. In a strained tone, Calvin asked how much it was going to cost him to get in. Ranger Moularas responded that the price for camping was $14.

Calvin approached the park vehicle and came within two feet of the open window. Ranger Moularas was trained not to be approached in his vehicle. He became apprehensive because of Calvin's proximity to his window and the minimal lighting in the area. He exited his vehicle and repeated that Calvin could enter as a camper, but needed to leave if he had no intention of camping. Calvin asked for Ranger Moularas's name. Ranger Moularas responded by giving his first and last name, and Calvin shouted, "Well, at least you know your damn name." At that point, Ranger Moularas thought Calvin might have been under the influence of intoxicants. He took out his flashlight and pointed it at Calvin's chest. Calvin said, "Get that F-ing light out of my face," put his hand up, and reached toward Ranger Moularas. They were standing approximately five feet apart.

Ranger Moularas told Calvin to get back. When Calvin did not retreat, he sprayed him with a quick burst of pepper spray. Calvin advanced such that Ranger Moularas had to back up approximately 10 feet. He yelled at Calvin to get back and get

2

on the ground. When Calvin kept coming with his hands toward his face in an aggressive posture, Ranger Moularas struck him with his baton approximately six times.

Calvin began walking away. Ranger Moularas holstered his baton and went after Calvin to arrest him for assault. He yelled, "Police, get on the ground," grabbed Calvin's left arm, and took him to the ground. He was able to cuff Calvin's left wrist, but Calvin would not yield his right arm. Ranger Moularas told Calvin to quit resisting and give his arm, but Calvin struggled for approximately a minute before Ranger Moularas could get the second cuff on. Ranger Moularas read Calvin his rights and Whatcom County sheriffs took him from the scene. Calvin referred to Ranger Moularas as "ranger dick."

The State charged Calvin with assault in the third degree and resisting arrest. Calvin offered a different version of events at trial. He testified that he initially approached Ranger Moularas's vehicle because he could not understand what he was saying. When Ranger Moularas asked him to leave, he returned to his vehicle. According to Calvin, only then did Ranger Moularas get out of his vehicle. He walked over toward Calvin, who was by then sitting in his car, shined his flashlight in, and told Calvin to get out. When Calvin got out, Ranger Moularas shined a flashlight in his eyes. Calvin put his hands up to block the light and Ranger Moularas immediately sprayed him with pepper spray. Calvin testified that he had no intent to harm Ranger Moularas, and did not move toward Ranger Moularas before Ranger Moularas started to beat him. But, Calvin acknowledged that he was angry. Calvin knew Ranger Moularas was associated with the park, but denied knowing he was a ranger. Calvin denied resisting arrest, but stated he rolled and twisted to avoid being hit by Ranger Moularas's baton.

The jury found Calvin guilty on both charges. He appeals.

DISCUSSION

I.    Sufficiency of the Evidence

Calvin argues that neither his conviction for assault in the third degree nor his conviction for resisting arrest is supported by sufficient evidence. Evidence is sufficient to support a conviction if, after the evidence and all reasonable inferences from it is viewed in the light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

A.    Assault in the Third Degree

As instructed in this case, the elements of assault in the third degree are that (1) Calvin committed an act with the intention of placing Ranger Moularas in apprehension and fear of bodily injury, (2) the act in fact created a reasonable apprehension and imminent fear of bodily injury, (3) Ranger Moularas was a law enforcement officer who was performing his official duties, and (4) the acts occurred in the State of Washington. Whether Calvin intended to actually inflict bodily injury is immaterial under the jury instructions. Calvin argues that there was insufficient evidence to prove that Ranger Moularas's fear of bodily injury was reasonable or that he intended to place Ranger Moularas in fear of bodily injury.

1.    Reasonable Apprehension and Fear

The incident occurred in a dark, isolated area. Ranger Moularas testified that Calvin was aggravated and appeared unbalanced or under the influence. He testified

4

that Calvin reached his hand toward him, swore at him multiple times, and eventually forced him to back up about 10 feet. Those facts are sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Ranger Moularas's apprehension and fear were reasonable.

Calvin's arguments to the contrary are unavailing. He first offers other reasonable interpretations of the evidence. For instance, he claims he has trouble hearing and it is normal to approach someone when you are talking. He also argues he raised his hands to his face only after Ranger Moularas aimed a flashlight at him, and put his fists towards his face only when Ranger Moularas sprayed him with pepper spray. But, in a sufficiency inquiry the court views the evidence in the light most favorable to the State. Calvin's alternative interpretations are irrelevant.

Calvin next compares the State's evidence to other cases in which there was more evidence that apprehension and fear were reasonable. In State v. Brown, a police officer was placed in reasonable fear when the defendant spun around, unzipped his jacket, removed a cigarette lighter that looked like a handgun, and pointed the lighter at the officer. 140 Wn.2d 456, 461-62, 998 P.2d 321 (2000). In State v. Godsey, a police officer was placed in reasonable fear when the defendant approached him with fists up, invited him to "'[c]ome on,' and took a step toward him." 131 Wn. App. 278, 288, 127 P.3d 11 (2006) (alteration in original). But, those were not sufficiency cases. The mere fact that Calvin's actions in this case were not as overt as the defendants' acts in those cases does not mean there was insufficient evidence here.

Finally, Calvin argues that he did not make a true threat and the use of a strained or sarcastic tone of voice does not create a reasonable fear of assault. But, Calvin's tone was not the only evidence that Ranger Moularas's fear was reasonable. And, the State was not required to prove that Calvin made a true threat because that is not an element of assault. See RCW 9A.36.031(1)(a).

### 2. Intent

In arguing that he did not have the requisite intent, Calvin points to his own testimony and compares this case to another case with more egregious facts to demonstrate that he had no intent to place Ranger Moularas in fear of bodily injury. Neither of those tactics establishes the absence of facts sufficient to find that Calvin intended to create a fear of bodily injury. Calvin acknowledged that he was angry when Ranger Moularas shined the flashlight on him and conceded that he may have told Ranger Moularas to get "that fucking flashlight out of my face." Ranger Moularas testified that as Calvin said that, he put his hand up and moved toward him. After Ranger Moularas sprayed Calvin with pepper spray, Calvin kept his fists up toward his face and continued to come toward him such that he had to back up approximately 10 feet. Calvin's acknowledged anger, combined with his movement toward Ranger Moularas, provide sufficient evidence for a rational trier of fact to find that Calvin intended to create a fear of bodily injury.

### B. Resisting Arrest

The jury was instructed that, to convict Calvin of resisting arrest, the State had to prove that he intentionally prevented or attempted to prevent a peace officer from

6

lawfully arresting him. Calvin argues that he could not have committed the crime of resisting arrest, because he did not know that Ranger Moularas was a law enforcement officer, did not know that he was under arrest, and did not use force.

Calvin relies on State v. Bandy for the proposition that, "it is essential that [the] accused have knowledge that the person obstructed is an officer" and "it is incumbent on an officer, seeking to make an arrest, to disclose his official character, if not known to the offender." 164 Wash. 216, 219, 2 P.2d 748 (1931). In Bandy, a woman was convicted of interfering with a public officer in the performance of his duties after interfering with the arrest of her father. Id. at 217-19. There was insufficient evidence to support her conviction, because there was no evidence that arresting officers displayed badges and there was no other reason for anyone in the area to understand that her father was being arrested. Id. at 219-21. In contrast, in this case Ranger Moularas was wearing his uniform and driving a marked car at the time of the incident. When he first approached Calvin, he identified himself as a ranger. When he took Calvin to the ground, he identified himself as "police." At trial, Calvin acknowledged that he knew Ranger Moularas was in a marked vehicle, knew he was associated with the park, and recognized that he was enforcing park rules. That evidence was sufficient for a rational trier of fact to determine that Calvin knew Ranger Moularas was a law enforcement officer.

Calvin next asserts that Ranger Moularas never said he was under arrest. He relies on cases in which the defendants were explicitly informed they were under arrest before they resisted. See State v. Ware, 111 Wn. App. 738, 740-41, 46 P.3d 280

7

(2002); State v. Simmons, 35 Wn. App. 421, 422, 667 P.2d 133 (1983). But, neither of those cases holds that an arresting officer must formally state that a person is under arrest for that person to be aware they are under arrest. A rational trier of fact could find that when a law enforcement officer identified himself as "police," told Calvin to get on the ground, and started to place handcuffs on him, Calvin knew he was under arrest.

Calvin also argues that he did not use the force necessary to be convicted of resisting arrest, because he was merely recalcitrant. His argument is based on a single sentence in State v. Hornaday, 105 Wn.2d 120, 131, 713 P.2d 71 (1986). In that case, the evidence showed that, after the defendant was arrested, he refused to voluntarily enter the backseat of the police and had to be forcibly placed there. Id. at 122. Counsel commented at trial that the defendant swung his elbow at a police officer, but there was no testimony that supported that assertion. Id. at 131. Thus, the court came to the sensible conclusion that a defendant, already detained, is merely "recalcitrant" and does not commit resisting arrest by refusing to voluntarily enter a police car. Id. at 131. Despite Calvin's persistent argument that he did not use sufficient force to be convicted of resisting arrest, "force" is not an element of the crime. The State bore the burden to prove that Calvin prevented or attempted to prevent his arrest. While Calvin was on the ground, Ranger Moularas advised him to stop resisting. Ranger Moularas testified that he struggled with Calvin for approximately one minute before he was able to handcuff Calvin's second hand. During that time, Ranger Moularas did not have Calvin fully under his control.

There was sufficient evidence to establish that Calvin knew Ranger Moularas was a law enforcement officer, knew he was being placed under arrest, and attempted to prevent his arrest.

II.    Self-Defense Instruction

Calvin argues that defense counsel was ineffective in failing to request a self-defense instruction. To prevail on a claim of ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances, and that the deficient performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The reasonableness inquiry presumes effective representation. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). To determine whether counsel was deficient by failing to propose a jury instruction, the court considers whether the defendant was entitled to the instruction and whether there was a strategic or tactical reason not to request the instruction. Id.; State v. Powell, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009).

Here, there was a clear strategic reason not to request a self-defense instruction, and even if one had been proposed, Calvin was not entitled to it. Calvin argued that he did not assault Ranger Moularas and did not resist arrest. To also argue that he used force against Ranger Moularas only in self-defense would have been completely contradictory.

Further, Calvin did not present evidence that would have supported a self-defense instruction. In general, reasonable force in self-defense is justified if there is an appearance of imminent danger. State v. Bradley, 141 Wn.2d 731, 737, 10 P.3d 358 (2000). But, the use of force in self-defense against an arresting law enforcement officer is permissible only when the arrestee actually faces an imminent danger of serious injury or death. Id. at 737-38. Calvin merely asserts that "a person in Mr. Calvin's position would have been afraid that he was facing imminent and serious bodily harm." That argument goes to the appearance of danger, not the existence of actual danger. Calvin has not shown that he would he have been entitled to a self-defense instruction had one been proposed. He has not established that he received ineffective assistance of counsel.

III.     Prosecutorial Misconduct

Prosecutorial misconduct is grounds for reversal if the prosecuting attorney's conduct was both improper and prejudicial. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). The court reviews a prosecutor's conduct in the full trial context, including the evidence presented, the total argument, the issues in the case, the evidence addressed in argument, and the jury instructions. Id. A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). Absent a timely objection, reversal is required only if the conduct is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury. State v. Warren, 165

Wn.2d 17, 43, 195 P.3d 940 (2008). Calvin argues the prosecutor committed misconduct by misstating the law, disparaging defense counsel, commenting on Calvin's constitutional rights, and commenting on Calvin's credibility.

A.    Misstating the Law

In rebuttal closing argument, the prosecutor argued:

> I hate to sound too facetious but that was quite a story. You know, I think the defense counsel here is talking to you and he is telling you that Ranger Moularas is a fine person yet he is calling him a liar. That's what he's doing. This is just outrageous, he's calling him a liar.

The trial court sustained defense counsel's objection and asked the prosecutor to "alter the word." The prosecutor continued:

> I understand, Your Honor. He is saying he is untruthful. He is saying that he is not coming here and telling you the truth. He is saying that Ranger Moularas didn't tell the truth from the beginning. Well, actually maybe told the truth right to Deputy Osborn but after that no. For what reason? Why? I mean, what motive would Ranger Moularas have to not tell you the truth? To change his report about what had actually happened? Why would he call him a fine person but also say he is not telling the truth? That's a big problem. If he is not telling the truth that's a big problem. Big, big, big problem. You know, that's his theory, that Ranger Moularas is just coming in here with these terrible untruths.

Defense counsel did not object to the prosecutor's revision.

Calvin argues that the prosecutor's arguments suggested that the jury had to find that Ranger Moularas was lying in order to acquit Calvin. Such an argument misstates the law, the role of the jury, and the appropriate burden of proof. State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996).

But, the prosecutor is entitled to respond to defense counsel's arguments. Defense counsel argued in closing that Calvin and Ranger Moularas offered different versions of events and that the jury had to find that Ranger Moularas's version was

correct to find Calvin guilty. Defense counsel argued that Calvin's version of events was corroborated by an initial statement of probable cause prepared by a responding officer, and Ranger Moularas's version was contradicted by the statement. The prosecutor was entitled to respond to defense counsel's argument that Ranger Moularas was untruthful.

B.    Disparaging Counsel and Commenting on Constitutional Rights

The prosecutor stated, "You know, another thing for you to consider is whether or not to trust [defense counsel]?" The trial court sustained defense counsel's objection. The prosecutor then advised the jury to, "consider [defense counsel's] argument and decide if it's trustworthy." Defense counsel did not object to the prosecutor's revised statement. The prosecutor also argued:

> He is blaming the victim. He is blaming Ranger Moularas for being in a position and then getting assaulted. Gee, if Ranger Moularas didn't contact him nothing would have happened, right? There would be no crime. Blaming the victim, that's not fair. Nobody wants to see that. It's not right.

Defense counsel did not object.

Calvin argues that these statements were misconduct, because the prosecutor disparaged defense counsel and because a complaint that defense counsel is blaming the victim is a comment on the defendant's right to cross-examine the State's witnesses.

It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity. State v. Thorgerson, 172 Wn.2d 438, 451, 258 P.3d 43 (2011). Thus, in Thorgerson, it was improper for the prosecutor to refer to the defense counsel's presentation of the case as "bogus'" and "'sleight of

12

hand.'" Id. at 451-52. But, defense counsel did not object and the court concluded that a curative instruction would have alleviated any prejudicial effect of the attack on defense counsel's strategy. Id. at 452. In Warren, it was improper for the prosecutor to tell the jury that the "'number of mischaracterizations'" in defense counsel's argument was "'an example of what people go through in a criminal justice system when they deal with defense attorneys.'" 165 Wn.2d at 29. But, defense counsel did not object and the court concluded that the comments were not so flagrant and ill-intentioned that no instruction could have cured them. Id. at 30. In State v. Negrete, the prosecutor told the jury he had "'never heard so much speculation'" in his life, and that defense counsel "'is being paid to twist the words of the witnesses.'" 72 Wn. App. 62, 66, 863 P.2d 137 (1993) (emphasis omitted). Defense counsel objected and the trial court sustained the objection, but defense counsel did not request a mistrial or a curative instruction. Id. at 66. The court determined that the remark was improper, but not irreparably prejudicial. Id. at 67. It noted that defense counsel's failure to move for a curative instruction or mistrial strongly suggested the argument did not appear particularly prejudicial in the context of the trial. Id. at 67.

In this case, the prosecutor advised the jury to consider whether defense counsel's argument was trustworthy and stated that defense counsel was "blaming the victim." Those statements are not as inflammatory as the prosecutors' statements in Thorgerson, Warren, or Negrete. Although defense counsel initially objected to one of the statements, the objection was sustained and defense counsel did not object to the prosecutor's altered argument. Calvin has failed to show, and the record does not

13

demonstrate, that further objection would have been futile. Thus, he must establish that the prosecutor's comments were so flagrant and ill-intentioned that he was irreparably prejudiced. The fact that defense counsel did not make further objections, or request a mistrial or curative instruction, strongly suggests that the comments did not appear unduly prejudicial in the context of trial. Calvin has failed to establish that any prejudice could not have been eliminated by a curative instruction.

Calvin also urges that the prosecutor's comment that defense counsel was "blaming the victim" was a comment on Calvin's rights to cross-examine the State's witnesses, to testify on his own behalf, and to be represented by counsel. His argument is limited to a bare assertion that his rights were violated, together with citation to the United States Constitution and a case in which the prosecutor argued that the defendant only represented himself because he had a strong desire to have power and be in control. See State v. Moreno, 132 Wn. App. 663, 672, 132 P.3d 1137 (2006). Calvin has failed to articulate how his rights were violated by the prosecutor's comments.

C.    Commenting on Calvin's Credibility

A prosecutor may not express his personal opinion of the credibility of witnesses or the guilt or innocence of the accused. State v. Reed, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). But, prosecutors are entitled to argue inferences from the evidence, and there is no prejudicial error unless it is "'clear and unmistakable'" that counsel is expressing a personal opinion. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)). Thus, it was

not improper for the prosecutor to argue, "I would suggest that one reason you might want to believe Pat Milosevich on that issue is that she at the time those events were occurring was watching her husband of 33 years being blown away by a .410 shotgun." Id. at 175. In contrast, it was improper for a prosecutor to state, "I believe Jerry Lee Brown, I believe him." State v. Sargent, 40 Wn. App. 340, 343-44, 698 P.2d 598 (1985) (emphasis omitted).

In this case, the prosecutor recited a long list of things that did not make sense in Calvin's testimony when compared to other evidence and his own inconsistent testimony. Then, the prosecutor told the jury that Calvin was "just trying to pull the wool over your eyes." The trial court overruled defense counsel's objection. The prosecutor's remarks more closely align with the statements in Brett than with the statements in Sargent. In context, the comments reflect an explanation of the evidence, not a clear and unmistakable expression of personal opinion.

## IV. Law of the Case Doctrine

Pursuant to CrR 6.15, it is within the province of the trial court to instruct the jury. Prior to giving the instructions, the parties are afforded an opportunity to object to the giving of any instruction or the refusal to give a requested instruction. CrR 6.15(c). Thus, any problems with jury instructions should generally be resolved before deliberations begin. But, the trial court also has discretion to give supplemental instructions. See, e.g., State v. Ng, 110 Wn.2d 32, 42, 750 P.2d 632 (1988); State v. Frandsen, 176 Wash. 558, 563-64, 30 P.2d 371 (1934); State v. Miller, 78 Wash. 268, 275-76, 138 P. 896 (1914); State v. Frederick, 32 Wn. App. 624, 626, 648 P.2d 925

(1982). CrR 6.15(f) expressly contemplates that the trial court may provide additional instructions after deliberations begin, so long as the instructions do not "suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate." Calvin nevertheless argues the trial court erred by correcting and replacing an instruction during jury deliberations.

The trial court originally gave an assault definition based on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 35.50, at 547 (3d ed. 2008) (WPIC) that included the term "unlawful force:"

> An assault is an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.
>
> An act is not an assault, if it is done with the consent of the person alleged to be assaulted.

During deliberations, the jury asked the trial court, "How does the law define 'unlawful force?'" The trial court correctly reasoned that the instruction misstated the posture and facts of the case. The term "unlawful force" is only necessary in the definition of assault when there is a specific argument from the defense that the use of force was somehow lawful. See WPIC 35.50, at 548. Without any specific lawful force argument, self-defense or otherwise, the trial court was faced with a dilemma. It could issue a response such as, "unlawful force is force that is not lawful." But, that response would be unhelpful. Alternatively, it could give a supplemental instruction that enumerated each type of lawful force. But, that option would give Calvin the benefit of arguments that he did not make. Instead, the trial court drafted a new definition of assault that omitted the "unlawful force" language. Defense counsel objected on the

16

grounds that the State made a mistake and had to live with that mistake, because the instructions had already been submitted. The trial court elected to give the new instruction:

> An assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

The trial court gave defense counsel an opportunity to reargue all or portions of the case. Counsel declined and asked for a mistrial. But, in doing so, defense counsel expressed that Calvin would not be waiving a claim of double jeopardy.

Under the law of the case doctrine jury instructions not objected to become the law of the case. State v. Hickman, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998). Thus, when the State adds an unnecessary element to a to-convict instruction and the jury convicts the defendant, the unnecessary element must be supported by sufficient evidence. Id. at 105. Here, Calvin contends that the State undertook to prove "unlawful force."

Although the State argues that the law of the case doctrine applies only when an element is added to a to-convict instruction, the doctrine is not limited to that application. It is a broad doctrine that has been applied to to-convict instructions and definitional instructions. See, e.g., City of Spokane v. White, 102 Wn. App. 955, 964-65, 10 P.3d 1095 (2000); State v. Price, 33 Wn. App. 472, 474-75, 655 P.2d 1191 (1982); Englehart v. Gen. Elec. Co., 11 Wn. App. 922, 923, 527 P.2d 685 (1974). It has been applied in both criminal and civil cases. See, e.g., Hickman, 135 Wn.2d at 102; Crippen v. Pulliam, 61 Wn.2d 725, 732, 380 P.2d 475 (1963).

17

The doctrine is based on the premise that whether the instruction in question was rightfully or wrongfully given, it was binding and conclusive upon the jury. Hickman, 135 Wn.2d at 101 n.2. Thus, a party cannot challenge unobjected to jury instructions for the first time on appeal, or conversely disavow jury instructions on appeal that were acquiesced to below. That basic function serves to avoid prejudice to the parties and ensure that the appellate courts review a case under the same law considered by the jury.

Here, an objection preserved the issue for review and the jury reached a verdict based on the supplemental instruction. Because the trial court has discretion to give supplemental instructions, the issue is not whether the law of the case doctrine bound the State to the "unlawful force" language at the time the jury was given instructions. Rather, our inquiry is whether the trial court abused its discretion when the jury sought further clarification and the trial court identified and corrected a problem. In State v. Ransom, the State charged the defendant with possession of cocaine with intent to deliver. 56 Wn. App. 712, 712-13, 785 P.2d 469. The State did not pursue an accomplice theory against the defendant. Id. at 713. But, during deliberations the jury asked the trial court:

> "If someone is an accessory to the actual or constructive or attempted transfer of a controlled substance from one person to another are they both guilty of the same?"

Id. The trial court then gave an accomplice instruction over defense counsel's objection. Id. The Court of Appeals reversed. Id. at 715. It concluded that, although the trial court has discretion to give further instructions after deliberations begin, those

18

instructions may not go beyond matters that had been, or could have been, argued to the jury. Id. at 714. The defendant was entitled to rely on the fact that the State chose not to pursue accomplice liability, which is a distinct theory of criminal culpability. Id. Accordingly, the trial court erred and a new trial was granted. Id. at 715.

In State v. Hobbs, the State acquiesced to an unnecessarily narrow venue element that required the jury to find that the defendant committed the crime in King County. 71 Wn. App. 419, 420-21, 859 P.2d 73 (1993). During jury deliberations, the trial court granted the State's motion to amend the instruction by deleting "King County" and inserting "State of Washington." Id. at 421. Defense counsel explained both below and on appeal that she was aware during trial that the State was not going to be able to prove venue and made strategic trial decisions based on that knowledge. Id. at 424. On appeal, we recognized that the trial court can give supplemental instructions so long as they do not go beyond matters that had been, or could have been, argued to the jury. Id. at 424. But, because defense counsel had adapted her trial strategy to the State's additional undertaking, we found that there was actual prejudice. Id. at 420, 425. We held that when presented with the State's motion to amend, the trial court's only viable options were to hold the State to its election or declare a mistrial. Id. at 425. We remanded for a new trial where the jury could be properly instructed from the outset. Id. at 425.

Unlike in those cases, there was no prejudice here. There is no evidence, or even any suggestion, that Calvin adapted his trial strategy to the inclusion of the "unlawful force" language. Defense counsel was given the opportunity to reargue the

case but declined. Calvin does not articulate why that remedy was inadequate. Further, there is no dispute that the trial court's supplemental instruction was a correct statement of the law. Calvin did not argue lawful force and was not entitled to any lawful force instructions or the inclusion of unlawful force in the definition of assault. The trial court did not abuse its discretion.[1]

## V.    Legal Financial Obligations

The trial court ordered Calvin to pay a total of $1,300 in mandatory and discretionary legal financial obligations (LFOs). It is also entered a boilerplate finding stating that Calvin had the ability to pay LFOs:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

Calvin argues that the finding is not supported by evidence, and that the trial court was required to determine whether Calvin had the ability to pay before ordering the payment of costs.[2]

We review the trial court's decision to impose discretionary LFOs under the clearly erroneous standard. State v. Baldwin, 63 Wn. App. 303, 312, 818 P.2d 1116,

---

[1] Calvin also argues that the trial court's substitution violated the appearance of fairness doctrine and constituted an impermissible comment on the evidence. It is unclear how those doctrines are violated when the trial court deliberated in response to an inquiry from the jury, discussed the issue with both parties, gave a legally correct substitute instruction, and gave the parties an opportunity to reargue their cases. A jury instruction that states the law correctly and concisely and is pertinent to the issues of the case does not constitute a comment on the evidence. State v. Johnson, 29 Wn. App. 807, 811, 631 P.2d 413 (1981). Calvin's claims have no merit.

[2] Calvin did not make these arguments below. But, illegal or erroneous sentences may be challenged for the first time on appeal. State v. Ford, 137 Wn.2d 472, 477, 973 P2d 452 (1999).

837 P.2d 646 (1991). Different components of the LFOs imposed on a defendant require separate analysis. Id. Here, Calvin challenges the imposition of $450 for court costs and a $250 fine.

A.    Court Costs

The trial court may order a defendant to pay court costs pursuant to RCW 10.01.160. But,

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them.  In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

RCW 10.01.160(3). It is well-established that this provision does not require the trial court to enter formal, specific findings. See State v. Curry, 118 Wn.2d 911, 916, 829 P.2d 166 (1992). Rather, it is only necessary that the record is sufficient for us to review whether the trial court took the defendant's financial resources into account. State v. Bertrand, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), review denied, 175 Wn.2d 1014, 287 P.3d 10 (2012). But, where the trial court does enter a finding, it must be supported by evidence.

In this case, the only evidence of past employment was Calvin's testimony at trial that he used to be a carpenter.  There was no evidence at all of present or future employment.  And, the only evidence of Calvin's financial resources was his testimony that he lived in a mobile home that did not have running water.[3]  At sentencing, the trial court did not make any inquiry into Calvin's resources or employability.  Indeed, the

---

[3] Calvin did not have court-appointed defense counsel, but the record does not establish who paid for his attorney.

State does not even argue that there is evidence to support the finding. Rather, it argues that "there is nothing in the record to show that Calvin will not have the ability to pay his legal financial obligations *in the future*." (Emphasis in original.) But, the inquiry is simply whether there is evidence to support the finding actually entered.[4] The trial court's finding is not supported. And, the record does not show that the trial court took Calvin's financial resources and ability to pay into account.

We remand for the trial court to strike the finding and the imposition of court costs.

### B.    Fine

Calvin also challenges the imposition of a $250 fine pursuant to RCW 9A.20.021. That provision, however, merely enumerates the maximum sentence for Calvin's convictions. It does not contain a requirement that the trial court enter findings or even take into account a defendant's financial resources before imposing a fine. Calvin has not articulated any basis for striking the fine.

### VI.    Statement of Additional Grounds

A defendant may submit a pro se statement of additional grounds for review pursuant to RAP 10.10. Our review of such statements, however, is subject to several practical limitations. For instance, we only consider issues raised in a statement of additional grounds that adequately inform us of the nature and occurrence of the alleged errors. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Further,

---

[4] In the absence of a finding, our inquiry would be whether the record revealed that the trial court took Calvin's financial resources into account and considered the burden it would impose on him as required by RCW 10.01.160.

22

we only consider arguments that are not repetitive of briefing. RAP 10.10(a). Finally, issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a statement of additional grounds. Alvarado, 164 Wn.2d at 569.

In an impassioned statement of additional grounds, in which Calvin asks that we reverse on a moral basis, Calvin lists 29 assignments of error. Six of those assignments of error, concerning the trial court's substitution of a jury instruction, defense counsel's failure to request a self-defense instruction, and the sufficiency of the evidence, are repetitive of appellant counsel's briefing. Another 17 of his assignments of error concern the effectiveness of defense counsel, and particularly whether defense counsel adequately emphasized certain evidence or legal arguments. But, "'[d]eficient performance is not shown by matters that go to trial strategy or tactics.'" State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (emphasis omitted) (alteration in original). Further, those arguments largely rely on facts or evidence outside the record. Calvin's remaining six arguments concern juror misconduct. But, there is no evidence of juror misconduct in the record. To the extent that Calvin's arguments concern facts and evidence not in the record, his concerns should be raised in a personal restraint petition.[5]

---

[5] At our direction, the court clerk denied Calvin's motion to continue oral argument for 120 days, for leave to submit a pro se supplemental brief, for leave to file a personal restraint petition, and to have his pro se supplemental brief and personal restraint petition heard simultaneously with his direct appeal. In the week before oral argument, Calvin filed two additional motions. He first filed a motion to modify the clerk's ruling. Calvin miscomprehends the original denial. He does not need leave to file a personal restraint petition. However, we deny his request to continue this case so that he may file an additional brief and a personal restraint petition to be heard together with his direct appeal. In a second motion, filed only one court day before oral

23

We affirm Calvin's convictions and remand for the trial court to strike the finding that Calvin has the present or future ability to pay LFOs and the imposition of $450 in court costs.

WE CONCUR:

---

argument, Calvin asked to withdraw ten arguments from his statement of additional grounds and partially withdraw another eight. We deny his request.