IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | |
|---|---|
| Respondent, | No. 71964-5-I |
| v. | DIVISION ONE |
| ARIEL STEVEN WILLIAMS, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 21, 2014 |

LEACH, J. — Ariel Williams appeals his conviction for domestic violence felony harassment while armed with a deadly weapon and two counts of domestic violence assault in the fourth degree. He challenges the sufficiency of the evidence to support his conviction for felony harassment and the offender score the court used to sentence him. In a statement of additional grounds, Williams claims that he received ineffective assistance of counsel. Because Williams shows no error, we affirm.

## Background

Williams lived with his girl friend Debra Mason in a townhouse condominium in Pierce County.[1] Helen Tseggai[2] also lived at this residence.

---

[1] Mason testified that at that time, she maintained most of her personal property at the condo and would spend about one night per week there, although she was "actually living" at her grandmother's home in Des Moines, Washington.

[2] Tseggai is also known as Helen Asefaw.

On August 24, 2012, Mason went to the condo to confront Williams about an unpaid cell phone bill. Mason and Williams got into an argument.

At some point, Tseggai told Mason that Williams "had grabbed her butt." Mason confronted Williams about this statement. After Williams accused Tseggai of lying, he and Tsaggai went into Tsaggai's room and began to argue. Williams pushed Tseggai onto the bed and said, "Bitch, if I wanted to have sex with you I can do it any time." Williams jumped on her on the bed. Mason tried to stop the fight, but Williams held down Tseggai and began to punch her "everywhere, nonstop."

Mason tried to grab Williams's arm and yelled, "Please stop. Please stop." Tseggai maneuvered to the other side of the bed. Williams grabbed Mason by the hair, pulled her down onto the bed, and "squished" her face.

Tseggai grabbed an empty vodka bottle from the top of the dresser and threatened to hit Williams over the head with it. Williams took the bottle away from Tseggai. Williams chased Tseggai around the room, and then the two began to argue again.

While Williams and Mason fought, Tseggai took a kitchen knife from her dresser and put it on top of the dresser. Williams picked up the knife and waved it around. Williams then threw the knife onto the floor.

At some point, Williams choked Tseggai, causing her to gag. Mason tried to stop him, but he pushed her down onto the floor and put his foot on her, while continuing to choke Tseggai. Mason yelled, "Stop it. Stop it. Please just stop it."

Williams stopped choking Tseggai after Mason grabbed Wiliams's "private area" and twisted it.

Williams ran into his room. Tseggai and Mason remained in Tseggai's room and shut the door. Tseggai wanted to call the police, but her cell phone did not work to make phone calls, and Mason's cell phone was in Williams's room. When Mason went to get her cell phone from Williams's room, he refused to give her the phone and threatened to "knock [her] out." Later, Mason heard Williams walk upstairs and retrieved her cell phone from his room.

Tseggai sent a text message to her boyfriend, asking him to come to the condo. After Tseggai's boyfriend arrived, Tseggai ran outside. Mason called 911. Williams ran away. He was not at the condo when the police arrived. Tseggai left the condo with her boyfriend.

About one hour after the police left, Williams returned to the condo and put his belongings into duffel bags. Mason called the police, who arrested Williams.

On August 27, 2012, the State charged Williams with four counts: felony harassment in counts I and II and assault in the fourth degree in counts III and IV. The information named Tseggai as the victim in counts I and III and Mason as the victim in counts II and IV. The State alleged a deadly weapon sentencing enhancement in counts I and II and also alleged that each of the four counts was "a domestic violence incident as defined in RCW 10.99.020."

At trial, after the State rested, Williams moved to dismiss counts I and II, the felony harassment counts, for insufficient evidence of a threat to kill. The court denied this motion.

The jury found Williams guilty of counts I, III, and IV—felony harassment against Tseggai and fourth degree assault against both Tseggai and Mason. The jury returned special verdicts finding that for these counts, Williams and Mason and Williams and Tseggai were "members of the same family or household." The jury also returned a special verdict finding that Williams was armed with a deadly weapon when he committed felony harassment against Tseggai. The jury found Williams not guilty of count II, felony harassment against Mason.

At sentencing, the court accepted the State's offender score calculation of 4. Williams did not challenge this offender score calculation but refused to stipulate to it. The court imposed a standard range sentence.

Williams appeals.

Analysis

Williams first claims that insufficient evidence supported his conviction for felony harassment. Sufficient evidence supports a conviction only if, when viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[3] For this

---

[3] State v. Maupin, 63 Wn. App. 887, 892, 822 P.2d 355 (1992) (citing State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980)).

analysis, "[c]ircumstantial evidence is just as reliable as direct evidence."[4] A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[5]

A defendant is guilty of harassment if, without lawful authority, the person knowingly threatens to cause bodily injury immediately or in the future to the person threatened or any other person.[6] The defendant must also, by words or conduct, place the person threatened in reasonable fear that he will carry out the threat.[7] A person who harasses another is guilty of a class C felony if the harassment occurs "by threatening to kill the person threatened or any other person."[8]

RCW 9A.46.020 prohibits only a "true threat," which is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another."[9] "The speaker of a 'true threat' need not actually intend to carry it out. It is enough that a

---

[4] State v. Frawley, 140 Wn. App. 713, 721-22, 167 P.3d 593 (2007) (citing State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997)), review granted, 176 Wn.2d 1030 (2013).
[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[6] RCW 9A.46.020(1)(a)(i).
[7] RCW 9A.46.020(1)(b).
[8] RCW 9A.46.020(2)(b)(ii).
[9] State v. Barnes, 158 Wn. App. 602, 610, 243 P.3d 165 (2010) (alteration in original) (internal quotation marks omitted) (quoting State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)).

reasonable speaker would foresee that the threat would be considered serious."[10]

First, Williams argues that the State failed to present sufficient evidence of a true threat. At trial, Mason testified that as Williams waved the knife, he said "something like 'I could kill you both right now. I could kill you right now,'" although he did not try to stab them. But, after the incident, Mason told a police officer that Williams said to Mason and Tseggai, "I'll kill you, and I don't care if I go to prison."

A rational trier of fact could find that a reasonable speaker would foresee that either of Williams's comments would be considered serious. He made the threat after assaulting the women and while waving a knife. Therefore, the State presented sufficient evidence that Williams knowingly threatened to kill Tseggai.

Williams also contends that the State failed to prove he placed Tseggai in reasonable fear that he would carry out any threat to kill. Tseggai testified that Williams waved the knife "like he was going to hurt us" and that she thought "[t]hat I was going to die." Although Williams at no point tried to stab Tseggai, the facts that he assaulted her, threatened her, and waved around the knife constitute sufficient evidence that his words or conduct placed her in reasonable fear that Williams would carry out his threat to kill.

---

[10] State v. Schaler, 169 Wn.2d 274, 283, 236 P.3d 858 (2010) (citation omitted) (citing Kilburn, 151 Wn.2d at 46).

Williams also claims, "The court erred in counting the current misdemeanor assaults as 'prior' offenses when they did not meet that definition." We review de novo a sentencing court's offender score calculation.[11]

"[A] sentencing court acts without statutory authority when it imposes a sentence based on a miscalculated offender score."[12] RCW 9.94A.525(21)(c) states,

> If the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was plead and proven . . .

> Count one point for each adult prior conviction for a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030 was plead and proven after August 1, 2011.

RCW 9.94A.030(20) states, "'Domestic violence' has the same meaning as defined in RCW 10.99.020 and 26.50.010." RCW 10.99.020(5)(d) defines "domestic violence" to include assault in the fourth degree "when committed by one family or household member against another." A "repetitive domestic violence offense" is any "[d]omestic violence assault that is not a felony offense under RCW 9A.36.041."[13]

The jury found Williams guilty of felony harassment, a class C felony.[14] For the assault counts, the State alleged in the information that the offenses involved "a domestic violence incident as defined in RCW 10.99.020." The jury

---

[11] State v. Moeurn, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010) (citing State v. Bergstrom, 162 Wn.2d 87, 92, 169 P.3d 816 (2007)).
[12] State v. Roche, 75 Wn. App. 500, 513, 878 P.2d 497 (1994).
[13] RCW 9.94A.030(41)(a)(i).
[14] RCW 9A.46.020(2)(b)(ii).

returned special verdicts finding that the State proved domestic violence for all three counts. The fourth degree assault counts were not felony offenses.[15] Because the jury convicted Williams of domestic violence felony harassment, "domestic violence" has the same meaning in both RCW 10.99.020 and RCW 9.94A.030, the domestic violence assault offenses were not felonies, and Williams was an adult when he committed the assaults, we conclude that RCW 9.94A.525(21)(c) applied to Williams's offender score calculation.

Further, RCW 9.94A.589(1)(a) required the court to count the assault convictions as prior convictions when calculating Williams's offender score. This statute provides that "whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score."[16] Because the court sentenced Williams for two or more current offenses, it properly counted the fourth degree assault counts as "prior convictions" and added one point for each of these counts when calculating Williams's offender score for the felony harassment count.

---

[15] See RCW 9A.36.041(2).

[16] RCW 9.94A.589(1)(a). This provision does not apply to serious violent and certain firearm offenses. It also states that "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." The parties do not dispute that none of the convictions was for a serious violent or firearm offense. The parties also do not dispute that none of Williams's convictions constituted the same criminal conduct.

Williams relies upon RCW 9.94A.525(1) in arguing that the assault convictions were "current—not 'prior'—convictions." This provision defines a prior conviction as a conviction that "exists before the date of sentencing for the offense for which the offender score is being computed. Convictions entered or sentenced on the same date as the conviction for which the offender score is being computed shall be deemed 'other current offenses' within the meaning of RCW 9.94A.589."[17] But, as explained above, RCW 9.94A.589 required the sentencing court to count the assault convictions as prior convictions when calculating Williams's offender score.

In a statement of additional grounds, Williams asserts that he received ineffective assistance of counsel based upon (1) "failure to dismiss," (2) "failure to prepare," (3) "failure to submit exculpatory evidence," (4) "failure to disallow self-authenticating evidence," and (5) "failure to impeach witnesses." We hold that Williams fails to establish ineffective assistance of counsel.

We review ineffective assistance of counsel claims de novo.[18] To prevail, a defendant must show both deficient performance and resulting prejudice.[19] Counsel's performance is deficient if it fell below an objective standard of reasonableness.[20] Our scrutiny of defense counsel's performance is highly

---

[17] RCW 9.94A.525(1).
[18] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).
[19] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[20] State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997).

deferential, and we employ a strong presumption of reasonableness.[21] "To rebut this presumption, the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'"[22] To establish prejudice, a defendant must show a reasonable probability that the trial's outcome would have been different absent counsel's deficient performance.[23] Failure on either prong of the test defeats an ineffective assistance of counsel claim.[24]

Williams claims, "If my counsel had performed his duty by following through with an already requested motion for dismissal based on the fact that the alleged victim/witness still had not shown up when given plenty opportunity, I would not have went to trial; thereby, have been found guilty of felony harassment."

After the State rested, Williams moved to dismiss the felony harassment counts for insufficient evidence. At no point did Williams move to dismiss on the alleged basis. He cannot raise for the first time on appeal the trial court's failure to dismiss based upon a witness's failure to appear.[25] And he fails to demonstrate that the court would have granted a motion to dismiss if made on this basis or that the outcome of the proceedings would have been different.

---

[21] Strickland, 466 U.S. at 689; State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

[22] State v. Grier, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

[23] State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694).

[24] Strickland, 466 U.S. at 697.

[25] RAP 2.5(a).

Williams also alleges that he received ineffective assistance of counsel because his attorney "failed to call any of the witnesses on my behalf[,] not even for investigative purposes." "'The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel.'"[26] The record does not demonstrate otherwise. Therefore, this argument fails.

Next, Williams asserts that he received ineffective assistance of counsel because his attorney did not submit "exculpatory evidence i.e. 911 tapes." Because matters of trial strategy or tactics do not establish deficient performance[27] and this argument also relies largely upon facts or evidence outside the record,[28] we reject this argument.

Williams further claims that counsel was ineffective because he "failed to disallow self-authenticating evidence." Although Williams is not required to cite to the record or to authority in his statement of additional grounds, he must "'inform the court of the nature and occurrence of alleged errors.'"[29] Because Williams does not develop this claim sufficiently to permit review, we do not address it.

---

[26] State v. Statler, 160 Wn. App. 622, 636, 248 P.3d 165 (2011) (quoting State v. Kolesnik, 146 Wn. App. 790, 812, 192 P.3d 937 (2008)).

[27] State v. Calvin, __Wn. App.__, 316 P.3d 496, 508 (2013) (quoting State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999)), petition for review filed, No. 89518-0 (Wash. Nov. 12, 2013).

[28] Calvin, 316 P.3d at 508 (citing State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008)).

[29] State v. Thompson, 169 Wn. App. 436, 493, 290 P.3d 996 (2012) (quoting RAP 10.10(c); State v. Meneses, 149 Wn. App. 707, 716, 205 P.3d 916 (2009)), review denied, 176 Wn.2d 1023 (2013).

Finally, Williams argues that his attorney failed to impeach Tseggai, asserting, "He never asked me what I thought of her quickly written interview nor did he take a recess to challenge her very first words as to how we met and her supposed job at Olive Garden." Any alleged failure to impeach presents a matter of trial strategy that did not amount to ineffectiveness. And Williams does not show that any error affected the outcome of his trial.

## Conclusion

Because the State presented sufficient evidence that Williams made a "true threat" and that he placed Tseggai in reasonable fear that he would carry out any threat to kill, Williams does not show that the court miscalculated his offender score, and Williams fails to establish that he received ineffective assistance of counsel, we affirm.

WE CONCUR: