# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48056-5-II |
| Respondent, | Consolidated with No. 48106-5-II |
| v. | |
| SANDRA DOREEN WELLER, aka SANDRA GRAF; JEFFREY WAYNE WELLER, | PART PUBLISHED OPINION |
| Appellants. | |

WORSWICK, J. — Sandra and Jeffrey[1] Weller appeal their exceptional sentences following a resentencing hearing. In the published portion of this opinion, we hold that the sentencing court did not exceed its statutory authority by imposing no-contact orders of 45 and 30 years on Sandra and Jeffrey, respectively. In the unpublished portion of this opinion we consider and reject the Wellers' arguments regarding the sentencing court's imposition of exceptional sentences, the denial of the Wellers' request for discovery material, and the denial of Sandra's request for new counsel at resentencing. We affirm.

---

[1] Because the co-appellants have the same last name, we refer to them by first name for clarity. We intend no disrespect.

No. 48056-5-II;
Cons. wi No. 48106-5-II

FACTS

Following a jury trial, Sandra and Jeffrey were convicted of several felony crimes involving abuse of their children. Sandra was convicted of four counts of second degree assault and one count of unlawful imprisonment. Jeffrey was convicted of five counts of second degree assault, one count of unlawful imprisonment, and one count of third degree assault of a child. All counts were domestic violence offenses. The jury found the Wellers' conduct manifested deliberate cruelty to the victims. The jury also found the offenses were part of an ongoing pattern of abuse. Based on the jury's finding of the two aggravators, Sandra and Jeffrey were sentenced to exceptional sentences of 20 years and 20 years plus one year, respectively.

The Wellers appealed their convictions and sentences. In *State v. Weller*, 185 Wn. App. 913, 931, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015) we affirmed their convictions, but reversed the jury's finding of the ongoing pattern of abuse aggravating factor and remanded for resentencing.

At the resentencing hearing, the sentencing court imposed exceptional sentences on Sandra and Jeffrey of 20 years based on the jury's finding that the offenses manifested deliberate cruelty. Sandra's four counts of second degree assault and one count of unlawful imprisonment ran consecutively to each other. Jeffrey's sentence included two counts of second degree assault running consecutively to each other and to three additional counts of second degree assault, one count of unlawful imprisonment, and one count of third degree assault, which ran concurrently.

The sentencing court imposed no-contact orders between Sandra and the victims for 45 years, and between Jeffrey and the victims for 30 years. Sandra requested that the sentencing

2

court impose a 10-year no-contact order. The sentencing court denied Sandra's request,

explaining that the victims requested a no-contact order and did not desire any contact, but noted

that in the future the victims could request a modification if they wanted to.

ANALYSIS

The Wellers argue that the sentencing court exceeded its statutory authority by imposing

no-contact orders in excess of the maximum penalty for their most serious offense. We disagree.

A sentencing court may impose crime-related prohibitions, including no-contact

provisions, when sentencing an offender for a felony conviction. *State v. Armendariz*, 160

Wn.2d 106, 119, 156 P.3d 201 (2007); former RCW 9.94A.505(8) (2010). We review a

sentencing court's imposition of crime-related prohibitions for abuse of discretion. *State v.*

*Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). However, the key question here is whether the

duration of the crime-related prohibition exceeded the sentencing court's statutory authority.

Consequently, we review this issue de novo. *See State v. France*, 176 Wn. App. 463, 469, 308

P.3d 812 (2013).

Generally, the crime-related prohibition may not be for a period of time longer than the

statutory maximum sentence for the crime. *Warren*, 165 Wn.2d at 32. However, when imposing

an exceptional sentence the court has discretion to sentence defendants to the statutory maximum

of each individual crime and run multiple convictions consecutively.[2] *See State v.* Cubias, 155

---

[2] We recognize that this discretion is not unlimited. For instance, an exceptional sentence may
be reversed because it is clearly excessive.

Wn.2d 549, 556, 120 P.3d 929 (2005); RCW 9.94A.589(1)(a). In such a situation, the total maximum allowable sentence exceeds the statutory maximum for each individual conviction.

The Wellers contend that the duration of the no-contact orders exceeded the sentencing court's authority. However, the jury's finding of an aggravating factor triggered the sentencing court's statutory authority to impose exceptional sentences on the Wellers. *See* RCW 9.94A.535, .589. The sentencing court issued exceptional sentences by imposing standard range sentences for each individual conviction and running them consecutively. So, while a single conviction of second degree assault (the Wellers' most serious crime) has a statutory maximum sentence of 10 years, the statutory maximum for the exceptional sentences at issue here is equal to the sum total of the statutory maximums for the consecutively run convictions.

Because Sandra was convicted of four counts of second degree assault (10 year maximum/count) and one count of unlawful imprisonment (5 year maximum), and the sentencing court ran all five sentences consecutively, the maximum allowable exceptional sentence was 45 years. Jeffrey's sentence included two counts of second degree assault running consecutively to each other and to three other counts of second degree assault, one count of unlawful imprisonment, and one count of third degree assault, which ran concurrently, for a total maximum allowable exceptional sentence of 30 years. Thus, the sentencing court did not exceed its statutory authority by imposing the no-contact orders against Sandra for 45 years and against Jeffrey for 30 years.

In each of their SAGs, Sandra and Jeffrey also argue that the lengthy no-contact orders violate their constitutional right to parent. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377,

4

229 P.3d 686 (2010). "A defendant's fundamental rights limit the sentencing court's ability to impose sentencing conditions." *Rainey*, 168 Wn.2d at 377. The Wellers' argument is meritless because their parental rights to the parties protected by the no-contact order have been terminated. *See In re Interest of E.J.W.*, No. 47545-6-II, slip op. at 3 n.1 (Wash. Ct. App. July 26, 2016) (unpublished), http://www.courts.wa.gov/opinions. Consequently, their fundamental right to parent is not implicated.

We affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

At the resentencing hearing, Sandra requested a new attorney. Sandra told the sentencing court that her counsel was prejudiced against her, was ineffective, and refused to communicate with her. Sandra's defense counsel explained that he had reviewed the materials from the prosecution and the court, the court of appeals' opinion, evidence, and case law. He also explained that he had met with Sandra once in court and spoken to her a few times on the phone. After inquiring into Sandra's counsel's qualifications, the sentencing court denied Sandra's request for new counsel.

Sandra and Jeffrey both argued for a reduction in their original sentences based on our prior opinion striking one of the two aggravating factors. Nonetheless, the sentencing court imposed exceptional sentences on Sandra and Jeffrey of 240 months based on the jury's finding

that the offenses manifested deliberate cruelty. The sentencing court entered findings of fact and conclusions of law for the imposition of the exceptional sentences, noting that the jury's finding of deliberate cruelty was supported by evidence admissible at trial, and as such the court had the authority to order exceptional sentences.

At the end of the resentencing hearing, the Wellers both requested copies of the police reports and other discovery, citing CrR 4.7. The State objected, arguing the Wellers were not entitled to copies of discovery given the status of the case, and suggested the Wellers file a public records request for such documents. The sentencing court denied the Wellers' requests.

ADDITIONAL ANALYSIS

II. JUDICIAL FACT FINDING

The Wellers argue that the sentencing court violated their Sixth and Fourteenth Amendment rights to a jury determination of all facts by imposing exceptional sentences based on judicial fact finding. Sandra and Jeffrey urge us to reconsider our earlier decision "in the interests of justice" pursuant to RAP 2.5(c)(2). Br. of Appellant (S.W.) at 9; Br. of Appellant (J.W.) at 5. Because our previous decision was correct, we decline to readdress the issue.

An exceptional sentence may be imposed if the sentencing court finds there are "substantial and compelling" reasons to go outside the standard range. RCW 9.94A.535. An exceptional sentence above the standard range must be based on a statutorily recognized aggravating factor. RCW 9.94A.535(2), (3). A sentencing court may not impose an exceptional sentence based on judicial fact finding. *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Whether an aggravating factor exists is a factual question for

jury determination. RCW 9.94A.535, .537(6). The sentencing court must enter written findings of fact and conclusions of law if it imposes an exceptional sentence. RCW 9.94A.535.

Here, the jury unanimously found that Sandra and Jeffrey's conduct during the commission of their offenses manifested deliberate cruelty to the victims beyond a reasonable doubt, as required by RCW 9.94A.537. In its findings of fact and conclusions of law, the sentencing court recognized the jury's special verdict and outlined the trial testimony to demonstrate that the jury's finding of deliberate cruelty was supported by the evidence. The sentencing court's findings and conclusions are not "judicial fact-finding" as argued by the Wellers. Rather, the sentencing court was complying with the requirements of RCW 9.94A.535 and .537. Thus, we hold that the Weller's argument that the sentencing court engaged in improper fact finding fails.

### III. DISCOVERY REQUESTS

The Wellers argue that the court erred by denying their requests for redacted copies of discovery materials pursuant to CrR 4.7.[3] Because CrR 4.7 applies to "procedures prior to trial," we disagree.

A trial court's discovery decision will not be disturbed on appeal absent a manifest abuse of discretion. *State v. Pawlyk*, 115 Wn.2d 457, 470-71, 800 P.2d 338 (1990). An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). CrR 4.7 applies to "procedures prior to trial." We interpret court rules the same way we interpret

---

[3] Sandra also makes this argument in her SAG.

statutes giving effect to the plain language. *State v. Otton*, 185 Wn.2d 673, 681, 374 P.3d 1108 (2016). The purpose behind discovery disclosure is to protect against surprise that might prejudice the defense. *State v. Barry*, 184 Wn. App. 790, 796, 339 P.3d 200 (2014).

Here, the Wellers did not request copies of discovery materials until the very end of the resentencing hearing. The sentencing court denied their request given the status of the case at that time. The Wellers' trial and sentencings had concluded. Because CrR 4.7 applies to procedures before trial, CrR 4.7 did not apply. Therefore, the sentencing court did not manifestly abuse its discretion by denying their request.

## IV. REQUEST FOR NEW COUNSEL

Sandra also argues that the sentencing court abused its discretion by denying her request for new counsel at resentencing. We disagree.

"A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997). Importantly, an attorney-client conflict may justify granting a substitution motion only when the defendant and counsel "are so at odds as to prevent presentation of an adequate defense." *Stenson*, 132 Wn.2d at 734. The right to choose one's counsel does not permit a defendant to unduly delay the proceedings. *State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010).

We review a trial court's refusal to appoint new counsel for an abuse of discretion. *State v. Lindsey*, 177 Wn. App. 233, 248, 311 P.3d 61 (2013). A trial court abuses its discretion when

8

its decision is manifestly unreasonable or based on untenable grounds. *Lindsey*, 177 Wn. App. at 248-49. A decision is based on untenable grounds if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *Lindsey*, 177 Wn. App. at 249. When reviewing a trial court's refusal to appoint new counsel, we consider (1) the extent of the conflict, (2) the adequacy of the trial court's inquiry, and (3) the timeliness of the motion. *Lindsey*, 177 Wn. App. at 249.

None of these factors show an abuse of discretion here. Sandra's counsel and Sandra gave contradictory accounts of their working relationship to the court. Sandra contended that her counsel was severely prejudiced against her and refused to communicate with her. She claimed he had screamed at her, told her he did not want to represent her, and told her "there is no game plan." Verbatim Report of Proceedings (VRP) at 7. Contrastingly, Sandra's counsel explained that since he had been appointed to Sandra's case he had prepared for the resentencing hearing by reviewing the case materials and relevant case law, and had met with Sandra in court and spoken to her a couple of times on the phone and once in the jail. Sandra's counsel told the sentencing court that he was prepared for resentencing and felt "very comfortable in [his] abilities to handle this matter and represent her accordingly." VRP at 4.

The sentencing court heard from both Sandra and her counsel as to the alleged conflict, and inquired as to counsel's ability to represent Sandra. The sentencing court explained that Sandra's counsel was appointed as the most qualified available to represent her, and noted that "this had been quite an extended period of time, and I think we do need to move ahead with it." VRP 6.

9

The sentencing court listened to Sandra's request for new counsel, evaluated the reasons she wanted new counsel, stated its own evaluation of Sandra's counsel's competence and ability to represent Sandra, and considered that a late substitution of counsel would delay the scheduled resentencing hearing. Thus, in light of the *Lindsey* factors above, we hold that the sentencing court did not abuse its discretion in denying Sandra's motion for new counsel.

## V. APPELLATE COSTS

Jeffry filed a supplemental brief requesting that, if the State substantially prevails in this appeal, we decline to impose appellate costs on him because he claims he is indigent. The State did not respond. We exercise our discretion and decline to impose appellate costs.

Under former RCW 10.73.160(1) (1995), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612 (2016). Ability to pay is an important factor in the exercise of that discretion, although it is not the only relevant factor. *Sinclair*, 192 Wn. App. at 389.

It appears that Jeffrey does not have the present ability to pay appellate costs, and it is questionable whether he will have the future ability to pay. The sentencing court found Jeffrey indigent at trial, and counsel was appointed to represent Jeffrey on appeal. There are no facts in the record and the State does not provide any argument to support a conclusion that Jeffrey's indigent status is likely to change. RAP 15.2(f).

No. 48056-5-II;
Cons. wi No. 48106-5-II

Under the specific circumstances of this case, we decline to impose appellate costs on

Jeffrey. [4]

We affirm.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Sutton, J.

---

[4] Sandra did not submit a supplemental brief on the issue.