# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75627-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DRANOEL ENAJ BROWN, | ) | |
| Appellant. | ) | FILED: February 12, 2018 |

LEACH, J. — A jury convicted Dranoel Brown of two counts of felony violation of a no-contact order. Brown makes several challenges to his conviction and sentence. He asserts that his counsel was ineffective, that insufficient evidence supports the jury's verdict on count 2, and that the prosecutor committed misconduct. But these claims lack merit, so we affirm Brown's conviction.

We agree, however, with Brown's contention that insufficient evidence supports the domestic violence designation on count 2. In addition, the trial court abused its discretion when it imposed no-contact orders without adequately considering their impact on Brown's fundamental parental rights. Thus, we remand for the trial court to reconsider the no-contact orders and amend the judgment and sentence consistent with this opinion.

FACTS

Melody Sykes and her husband, Dranoel Brown, had three children together, including a daughter, E.S., who was six years old in 2015. In September 2015, no-contact orders prevented Brown from contacting Sykes or E.S. or from coming within 500 feet of their residence.

On September 17, 2015, several King County sheriff's deputies, believing that Brown was at Sykes's residence, went to the residence. The deputies knocked on the front door. After receiving no immediate answer, they walked the perimeter of the house. All the windows that the deputies observed were closed. Eventually, Sykes answered the door and let the deputies into the house.

Inside the house, Deputy Jaron Smith encountered a locked bedroom door. He heard noises that sounded like a window being slammed open and someone jumping out of it. Deputy Smith forced the door open. He saw no one in the room but did see men's shoes and clothing on the bed and a wide open window. The deputies had seen the same window closed during their perimeter search.

The police dispatched a helicopter and a K-9 tracking unit. The K-9 dog tracked Brown's scent from outside the open bedroom window to some thick sticker bushes. With a thermal-detecting device, the helicopter confirmed a heat signature in those bushes. Deputies found Brown in those thick sticker bushes.

They took him into custody. Brown had cuts all over him and had no shoes on.

The State charged Brown with two counts of felony violation of a court order, count 1 for violating the no-contact order for Sykes and count 2 for violating the no-contact order for E.S. The jury convicted Brown of both counts. The jury found that the crime charged in count 1 was an aggravated domestic violence offense that was part of an ongoing pattern of abuse. The jury also found that both Sykes and E.S. were members of the same family or household as Brown.

The court sentenced Brown to 60 months' confinement on count 1 and 0 days' confinement and 12 months' community custody on count 2. Because of the domestic violence aggravator, the court imposed an exceptional sentence and ordered the sentences to be served consecutively.[1] The court also ordered Brown to have no contact with Sykes or E.S. for 10 years.

Brown appeals his conviction and sentence and challenges the no-contact orders.

ANALYSIS

Ineffective Assistance

First, Brown claims he received ineffective assistance of counsel. To prove a felony violation of a no-contact order, the State must establish that the

---

[1] See RCW 9.94A.535(2).

defendant has two prior convictions for violating the provisions of a court order.[2] Defendants often stipulate to two prior convictions to avoid any prejudice from introducing the details of those convictions.[3] The United States Supreme Court held in Old Chief v. United States[4] that a trial court must accept a defendant's offer to stipulate to the existence of a prior conviction when evidence of the prior conviction is unduly prejudicial. Brown claims defense counsel provided ineffective assistance by failing to stipulate to Brown's prior convictions.

Claims of ineffective assistance present mixed questions of law and fact that this court reviews de novo.[5] We examine the entire record to decide whether the appellant received effective representation and a fair trial.[6] To succeed on his ineffective assistance claim, Brown must show that his attorney's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced him.[7] If Brown fails to establish either prong of this test, we need not consider the other.[8]

---

[2] RCW 26.50.110(5).

[3] State v. Case, 187 Wn.2d 85, 87, 384 P.3d 1140 (2016).

[4] 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); see also State v. Johnson, 90 Wn. App. 54, 62-63, 950 P.2d 981 (1998).

[5] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

[6] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (quoting State v. Ciskie, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988)).

[7] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[8] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

On review, we give defense counsel's performance a great deal of deference and employ a strong presumption of reasonableness.[9] The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[10] We first note that Old Chief does not require the defense to stipulate to prior convictions.[11] And, as we have previously observed, a defendant may have a strategic reason for deciding not to stipulate.[12]

Here, the record shows that defense counsel intended to use the judgment and sentence (J&S) documents as part of the defense strategy. Brown was charged with felony violations of no-contact orders issued in 2014. To convict Brown of these offenses, the State had to prove that Brown knew about a no-contact order and knowingly violated a provision of the order.[13] To show two prior convictions of a court order, the State offered the J&S documents for 2012 and 2015 convictions for a domestic felony violence of a no-contact order. The court admitted redacted versions of the J&S documents. At defense counsel's request, the court did not redact a portion of the 2015 J&S about Brown's contact

---

[9] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

[10] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[11] See State v. Humphries, 181 Wn.2d 708, 717, 336 P.3d 1121 (2014) (stating that Old Chief holds "that a trial court abuses its discretion when it fails to accept a stipulation to a prior conviction upon defense counsel's request" (emphasis omitted)).

[12] State v. Streepy, 199 Wn. App. 487, 502-04, 400 P.3d 339, review denied, 189 Wn.2d 1025 (2017).

[13] RCW 10.99.040(4); RCW 26.50.110(5).

with Sykes. Defense counsel claimed that part of the 2015 J&S document was relevant to the State's burden to show that Brown knowingly violated a provision of a court order. The issuing court had crossed out part of the judgment that stated that Brown should have no contact with Sykes for five years and, in a corresponding appendix, stated, "Defendant shall have no contact with: Melody Sykes" without specifying a time limit for the prohibition. Trial counsel indicated that this was relevant to Brown's knowledge of the scope of the prohibition. Counsel argued that the confusing nature of the most recent no-contact order created reasonable doubt as to what Brown understood of the conditions of the 2014 no-contact orders. Trial counsel could not have made this argument without introducing the 2015 J&S. Thus, introducing this document was a part of a defense strategy.

Brown contends that the State's argument fails because the defense strategy does not apply to the plea agreements and 2011 J&S, which the court also admitted. But Brown's counsel treated the admission of the J&S documents thoughtfully. She objected to admission of the plea statements and successfully asked the court to redact portions of the documents to omit prejudicial information. Further, Brown provides no authority to show that counsel may stipulate to some but not all J&S documents offered by the State. Here, the court allowed plea statements in so the State could use them to rebut Brown's

-6-

defense. The decision not to stipulate to one of two necessary qualifying convictions does not constitute deficient performance in light of counsel's strategy and the court's inclination to give a comprehensive view of the circumstances involved in Brown's defense.

Brown also contends that the strategy was not a legitimate tactic because jury instructions limited the purpose for which the jury could consider the prior convictions. The State counters that this argument critiques the execution of the strategy, not its legitimacy. Indeed, despite the limiting instruction, counsel presented the defense to the jury. We will not decide counsel's tactics were not part of a legitimate strategy simply because the strategy failed.[14]

Because counsel had a legitimate strategic reason for not stipulating to the prior convictions, counsel did not provide deficient representation. Because Brown does not show deficient performance, his ineffective assistance claim fails.

<u>Sufficiency of Evidence</u>

Next, Brown contends that insufficient evidence supports count 2, violation of the no-contact order involving E.S. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable

---

[14] <u>Streepy</u>, 199 Wn. App. at 504 (noting that the fact that a tactic did not succeed does not make it any less tactical).

doubt."[15] The reviewing court must draw all reasonable inferences in favor of the State.[16] A jury may make inferences based on circumstantial evidence.[17] But those inferences must be reasonable and cannot be based on speculation.[18]

The no-contact order provision for E.S. prohibited Brown from knowingly entering, remaining, or coming within 500 feet of E.S.'s residence, school, workplace, or person. No evidence shows that Brown came within 500 feet of E.S.'s person. Thus, the State's case depends on Sykes's home being E.S.'s residence.

Brown contends that the State did not prove beyond a reasonable doubt that E.S. lived at her mother's residence. Multiple witnesses testified that they did not see E.S. at Sykes's house that day. And Brown points out that no witness had personal knowledge that E.S. lived there. Still, while the jury heard no direct evidence about E.S.'s residence, it heard sufficient circumstantial evidence to support its conclusion. Laurel Kelly, an investigator with Muckleshoot Child and Family Services for the Muckleshoot Tribe, testified that she saw E.S. at Sykes' home six times in 2015 before the police arrested Brown. Kelly also testified that in May 2014, a tribal support program ordered beds for Sykes's children when Sykes moved into the house. Kelly testified that she had

---

[15] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[16] Salinas, 119 Wn.2d at 201.
[17] State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).
[18] Vasquez, 178 Wn.2d at 16.

no reason to believe that E.S. lived somewhere other than Sykes's residence. She believed that Sykes's home was also E.S.'s home. The jury could reasonably infer from the evidence that E.S. had been seen at Sykes's house, Sykes was E.S.'s mother, E.S. was only six years old, and the house was also E.S.'s residence. Sufficient evidence supports the jury's verdict on count 2.

Brown contends that the open Child Protective Services (CPS) case shows that Sykes's children might have been removed from her care. Kelly testified that a CPS investigator went to Sykes's home on the day of Brown's arrest. But Brown identifies nothing else in the record to corroborate his claim about an open CPS case for Sykes and her children. Nothing in the record shows that E.S. had been removed from the home. The mention of a CPS representative does not conclusively rebut the evidence that shows E.S. lived with her mother.

Prosecutor Misconduct

Brown contends that the prosecutor committed misconduct during closing argument. A defendant claiming prosecutorial misconduct has the burden of proving that the prosecutor's conduct was both improper and prejudicial.[19] We evaluate the challenged statements in "the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and

---

[19] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

the jury instructions."[20] If the defendant does not object at trial, he must show that the alleged misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[21] "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[22]

Brown contends that the prosecutor misrepresented Kelly's testimony about Sykes's custody of E.S. The prosecutor stated, "Laurel Kelly told you that was [E.S.'s] residence. There's no question." Brown asserts that Kelly's testimony was not so clear about E.S.'s residence. Brown also claims that the prosecutor stated facts not in evidence. In closing, the prosecutor stated, "[W]hen I asked her was there anyone besides Melody Sykes that had custody or guardianship of the child, she said no." Brown asserts that the prosecutor never asked about custody or guardianship of E.S.

Brown is correct that these statements contain some errors. Kelly did not testify with certainty that E.S. lived with Sykes, only that she believed that was the case. And the State admits that the prosecutor's statement about Sykes's custody of E.S. was a mistake. Thus, the prosecutor's statements departed from testimony slightly. But Brown does not show that these errors were so egregious

---

[20] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).
[21] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).
[22] Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

that a jury instruction could not have cured them.  Further Brown does not show that this conduct "resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"[23]  While the prosecutor may have misstated the evidence, substantial evidence supports the finding that Sykes's residence was also E.S.'s residence, as explained in the preceding section.  Because Brown does not show that "'no curative instruction would have obviated any prejudicial effect on the jury'" or that the statements had a substantial likelihood of affecting the verdict, Brown waived this challenge by failing to object at trial.[24]

Law of the Case

Next, Brown contends that the domestic violence designation should be stricken as to count 2 because insufficient evidence supports the jury's finding that Brown and E.S. were members of the same family or household.

Brown relies on the law of the case doctrine.  This doctrine provides that "jury instructions not objected to become the law of the case."[25]  And we evaluate a challenge to the sufficiency of the evidence by looking at the jury instructions.[26]  Our Supreme Court explained in State v. Hickman[27] that "a defendant may

---

[23] Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

[24] Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

[25] State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[26] Hickman, 135 Wn.2d at 102-03.

[27] 135 Wn.2d 97, 102, 954 P.2d 900 (1998) (citing State v. Ng, 110 Wn.2d 32, 39, 750 P.2d 632 (1988); State v. Barringer, 32 Wn. App. 882, 887-88, 650 P.2d 1129 (1982), overruled in part on other grounds by State v. Monson, 113 Wn.2d 833, 849-50, 784 P.2d 485 (1989)).

assign error to elements added under the law of the case doctrine" and "[s]uch assignment of error may include a challenge to the sufficiency of evidence of the added element." In addition, the law of the case doctrine is not limited to circumstances where an element is added to a to-convict instruction.[28] "It is a broad doctrine that has been applied to to-convict instructions and definitional instructions."[29]

The law of the case doctrine applies here. RCW 10.99.020(3)'s definition of "family or household members" includes "persons who have a biological or legal parent-child relationship."[30] The jury instructions, however, omitted the parent-child relationship from its definition. The jury instructions stated only that "[f]or purposes of this case, 'family or household members' means spouses or former spouses or persons who have a child in common, regardless of whether

---

[28] State v. Calvin, 176 Wn. App. 1, 21, 316 P.3d 496 (2013).

[29] Calvin, 176 Wn. App. at 21.

[30] The full definition is as follows:

"Family or household members" means spouses, former spouses, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including stepparents and stepchildren and grandparents and grandchildren.

RCW 10.99.020(3).

they have been married or have lived together at any time." The State is bound by this error.[31] The erroneous jury instruction is the law of the case.[32]

The State contends, however, that this error is harmless. The State emphasizes that the error involves an omission and likens this case to our Supreme Court's decision in State v. Brown[33] that holds when an erroneous jury instruction omits an element of the offense, it is subject to harmless error analysis. The court held that the omission or misstatement of an element of a charged crime is harmless if the court can conclude beyond a reasonable doubt that the jury would have reached the same verdict absent the error.[34] The State contends that this harmless error analysis should apply to the instruction here and because sufficient evidence supports a finding that E.S. is part of Brown's family or household based on the statutory language, the omission of the parent-child prong of the definition is harmless.

But the concerns underlying Brown's decision are not present here. In Brown, the court was concerned about the defendant's constitutional rights and

---

[31] Hickman, 135 Wn.2d at 105 (noting that "the law of the case doctrine benefits the system by encouraging trial counsel to review all jury instructions to ensure their propriety before the instructions are given to the jury").

[32] The State claims that the United States Supreme Court overruled Hickman in Musacchio v. United States, __ U.S. __, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016). But the Washington Supreme Court recently affirmed that the law of the case doctrine is still good law in Washington. State v. Johnson, 188 Wn.2d 742, 756-62, 399 P.3d 507 (2017).

[33] 147 Wn.2d 330, 340, 58 P.3d 889 (2002) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

[34] Brown, 147 Wn.2d at 341.

the State's burden to prove every element of a crime beyond a reasonable doubt.[35] The due process guaranteed by the Fourteenth Amendment to the United States Constitution requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."[36] The erroneous instructions in Brown lowered the State's burden and permitted the jury to convict a defendant when the State had not proved every element of the crime charged.[37] For this reason, application of the law of the case doctrine would be inappropriate in cases like Brown. Here, by contrast, the error effectively elevated the State's burden. Thus, we need not be concerned that the misstatement deprived Brown of a fair trial. There was no risk of the jury convicting Brown without the State establishing every element of this offense beyond a reasonable doubt. Due process prevents application of the law of the case doctrine in Brown, but it does not prevent its application here.

On the other hand, this case is similar to Hickman. A circumstance where the jury instructions state additional nonessential elements of a charged crime is functionally the same as when the instructions omit an alternative basis for a

---

[35] Brown, 147 Wn.2d at 339 ("It is a fundamental precept of criminal law that the prosecution must prove every element of the crime charged beyond a reasonable doubt.").

[36] Jackson v. Virginia, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

[37] See Brown, 147 Wn.2d at 339.

jury's finding. In each scenario, the State is held to a higher burden than the law requires.

In sum, the law of the case doctrine applies here, but the harmless error standard does not. The State does not dispute that based on the jury instructions, insufficient evidence supports a finding that E.S. was a member of Brown's family or household. Thus, insufficient evidence supports the domestic violence designation.

## No-Contact Orders

Finally, Brown contends that the court erred when it entered orders preventing Brown from contacting Sykes and E.S. for 10 years. In general, appellate courts review sentencing conditions for abuse of discretion.[38] A trial court abuses its discretion when "the decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons."[39] But we "more carefully review conditions that interfere with a fundamental constitutional right."[40] And we review whether the duration of the crime-related prohibition exceeds the sentencing court's statutory authority de novo.[41]

---

[38] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).
[39] State v. Ancira, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001).
[40] In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010).
[41] State v. Weller, 197 Wn. App. 731, 734, 391 P.3d 527, review denied, 188 Wn.2d 1017 (2017).

No. 75627-3-I / 16

Brown contends, and the State concedes, that the orders violated due process and statutory limits. We agree that the orders violated due process but disagree that the court exceeded its statutory authority.

First, Brown contends that the no-contact orders exceed the statutory maximum. Courts may impose a crime-related prohibition like a no-contact order as a condition of a sentence.[42] In general, that prohibition may not exceed the statutory maximum sentence for the crime for which the defendant is convicted.[43] However, in State v. Weller,[44] Division Two held that when the court imposes an exceptional consecutive sentence, the court may stack the statutory maximums consecutively to determine the maximum prohibition it may impose. In Weller, the trial court imposed an exceptional sentence when it ran the standard range sentences for each individual conviction consecutively.[45] Division Two decided that the trial court could impose a no-contact order for a period equal to the sum of the maximum sentences on each count.[46] Here, the court also imposed consecutive sentences. Thus, consistent with Weller, to calculate the statutory maximum, the trial court properly stacked the individual maximum sentences for each count. A felony violation of a court order is a class C felony.[47] The

---

[42] State v. Armendariz, 160 Wn.2d 106, 120, 156 P.3d 201 (2007).
[43] Armendariz, 160 Wn.2d at 120.
[44] 197 Wn. App. 731, 734-35, 397 P.3d 527, review denied, 188 Wn.2d 1017 (2017).
[45] Weller, 197 Wn. App. at 735.
[46] Weller, 197 Wn. App. at 734-35.
[47] RCW 26.50.110(5).

-16-

maximum sentence for a class C felony is 5 years.[48] Because the court imposed consecutive sentences, the maximum period for the no-contact order is 10 years.

In explaining its concession, the State distinguishes Weller. But the distinctions the State observes are not material. First, the State claims that this case is different because it involves single counts against multiple victims while Weller involved multiple counts against individual victims. Indeed, in Weller, the two defendants were charged and convicted with several counts of assaulting two children.[49] But contrary to the State's contention, while the defendants in Weller were convicted of multiple counts with respect to each victim, the trial court still properly stacked counts for the separate victims. Thus, the stacking in Weller is functionally the same as the stacking here. Second, the State observes that here the domestic violence aggravator applies to only one victim, while in Weller the aggravator applied to all counts. But this distinction does not matter. Brown does not challenge the trial court's authority to impose the exceptional sentence. So long as the court had the authority to impose the exceptional sentence, it had the authority to stack the statutory maximums. Despite the State's assertions, Weller is not readily distinguishable. Consistent with Weller, the trial court properly stacked the statutory maximum sentences for each count to determine the maximum duration of the crime-related prohibition.

---

[48] RCW 9A.20.021(1)(c).

[49] State v. Weller, 185 Wn. App. 913, 917, 344 P.3d 695 (2015) ("The convictions arose from their abuse of their 16-year-old twins.").

-17-

We agree, however, with Brown's contention that the court failed to adequately consider the need for the conditions. The rights to marry and parent natural children are fundamental rights.[50] "Conditions that interfere with fundamental rights must be reasonably necessary to accomplish the essential needs of the State and public order."[51] The court must narrowly draw any condition affecting a fundamental right after deciding that no reasonable alternative exists to achieve the State's interest.[52]

Here, nothing in the record shows that when the court imposed the no-contact orders, it considered Brown's fundamental rights as a spouse and parent. We further note that the court's reasons for preventing contact with E.S. are questionable. The court stated,

> . . . I don't believe you should have contact with [E.S.] either, not until you've engaged in some treatment to assist you in understanding the effect of domestic violence on children, and I am concerned that with any potential contact you have with Ms. Sykes, that chaos continues. At some point your children are going to intervene. That's what happens when they get older—they step in and then they get hurt.

This court disapproved of similar reasoning in State v. Ancira.[53] In Ancira, the court ordered that the defendant have no contact with his wife and two minor

---

[50] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (right to parent natural children is a fundamental right); Loving v. Virginia, 388 U.S. 1, 12, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967) (marriage is a fundamental right).

[51] Warren, 165 Wn.2d at 32.

[52] Warren, 165 Wn.2d at 34-35.

[53] 107 Wn. App. 650, 27 P.3d 1246 (2001).

children for a period of five years.[54] The trial court explained that it included the children in the no-contact order because "[t]he history of violence between you and your wife has been conducted before your children. I don't want any further harm to them. Even if they just witnessed it and aren't direct victims of physical violence themselves, it is extremely harmful to children."[55] On appeal, this court determined that both the nature and the scope of the sentencing condition were not shown to be reasonably necessary.[56] As the State notes in its concession, the facts in Ancira are similar to those here. Here, the trial court provided some explanation for its decision to impose no-contact orders but seemed to rely on the harm caused when children witness domestic violence between spouses. The trial court should have conducted more thorough and individualized analyses about the prohibitions.

The trial court abused its discretion in issuing the prohibition without making an adequate effort to "to tailor the scope of the no contact order or consider less restrictive alternatives."[57] We remand so the trial court can consider the constitutional limitations on sentencing conditions. Consistent with our decision in Ancira,[58] the trial court should also consider whether the family or juvenile courts provide a better forum to address Brown's future contact with his

---

[54] Ancira, 107 Wn. App. at 652-53.
[55] Ancira, 107 Wn. App. at 653.
[56] Ancira, 107 Wn. App. at 654-55.
[57] Warren, 165 Wn.2d at 49 (Sanders, J., dissenting).
[58] Ancira, 107 Wn. App. at 655.

child. And any sentencing condition limiting Brown's contact with his child should clearly describe how that condition may be modified in the future in appropriate circumstances.

## CONCLUSION

Brown does not show that his trial counsel's performance was deficient. Sufficient evidence supports the jury's verdict on count 2. Brown's prosecutorial misconduct claim fails. We affirm Brown's conviction.

We remand for resentencing, however, because insufficient evidence supports the domestic violence designation on count 2. Further, the trial court imposed no-contact orders without considering the defendant's constitutional rights. We affirm Brown's conviction but reverse his sentence and remand for further proceedings consistent with this opinion.

*Leach, J.*

WE CONCUR:

*Becker, J.*

-20-