[No. 22738. Department One. August 27, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. ELIZABETH BANDY, *Appellant*.[1]

*R. M. Dye,* for appellant.

*Joseph H. Johnston* and *Floyd J. Underwood,* for respondent.

[1]Reported in 2 P. (2d) 748.

Main, J.—Elizabeth Bandy, a girl approximately eighteen years of age, was accused of crime by an information which contained two counts, in the first of which she was charged with assault in the second degree, and in the second with interfering with a public officer in the performance of his duties. The jury returned a verdict of not guilty upon the first count, and one of guilty as to the second. At the conclusion of the evidence, and before the case was submitted to the jury, the defendant moved that count two of the information be withdrawn from the jury's consideration, for the reason that the evidence was not sufficient to sustain a conviction on that count. The motion was overruled, and, after the return of the verdict, the defendant moved in arrest of judgment, which motion was overruled. Judgment and sentence was entered upon the verdict, from which the defendant appeals.

The facts are these: George Bandy, the father of the appellant, owned and operated a drug store in the town of Wilbur, in Lincoln county. As one entered the drug store, on the left was a roll top desk and on the right a soda fountain. Farther back on either side of the room were show cases. In the left hand rear corner was the prescription room. There was no opening between this room and the front room, so that one in either of the rooms could not see or know what was going on in the other. About the center of the rear of the building, and to the right of the prescription room, was a stairway leading to a room on the second floor.

March 29, 1930, a Federal prohibition agent went to the drug store, and he and Mr. Bandy went into the prescription room. While there, Bandy sold some liquor to another person, who immediately left. Shortly thereafter, two other Federal prohibition

agents went to the store and passed into the prescription room. At this time, Mr. Bandy was in the act of selling moonshine whiskey to the agent who had first gone in. Mr. Bandy was thereupon placed under arrest and the prescription room was searched, as was also the basement. In the prescription room were found two jugs of moonshine whiskey, and in the basement three or four more. Two of the jugs were carried out through the front of the store room and placed in an automobile in front, but these jugs were in cartons and their contents could not be seen. The other jugs were placed near the stairs above referred to. One of the agents went out to telephone the sheriff, one of them remained with Mr. Bandy near the stairway, and the other was in the front of the building near the soda fountain.

The appellant was sitting at the roll top desk on the left in front, talking with Mrs. Goldie Kreuch, who was standing at the end of the desk. From where the appellant was sitting, she could not see into the prescription room, or see or observe what was going on near the stairway. Mr. Bandy, while he was being detained near the stairway, was nervous, and, as the agent having him in charge testified, repeatedly wanted to go up the stairs. Judd Layton, an elderly man, came into the store and engaged in conversation with the agent who was near the soda fountain. Finally Mr. Bandy, as the agent who was with him testified, "started to go upstairs, and I had to catch him by the leg."

This, apparently, is the first thing that attracted the appellant's attention. She immediately got up, picked up a revolver which was lying in one of the drawers of the desk, and hastily went to the aid of her father. The agents testify that she pointed the revolver at

one of them and said, "If you arrest my daddy, I'll kill you." The witnesses for the appellant testified that she said, "Don't you touch my daddy," or something to that effect, and that she did not point the revolver at the officer. The prohibition agent who was in the front of the store and the gentleman with whom he was talking followed the appellant to the rear, and, immediately upon her making whatever remark she did make, took the revolver from her hand. Thereafter she was charged, as above stated, with the result indicated.

The controlling question upon this appeal is whether the appellant knowingly resisted by force or violence the officers in the performance of their duty. Section 2331, Rem. Comp. Stat., provides that:

"Every person . . . who shall knowingly resist by force or violence any executive or administrative officer in the performance of his duty, shall be guilty of a gross misdemeanor."

Under this statute, obviously, knowledge is an essential element of the crime. In 46 C. J., page 874, it is said:

"C. Obstructing or Interfering with Officer in the Performance of his Duty.— . . .

"2. To constitute this offense it is essential that accused have knowledge that the person obstructed is an officer; consequently it is incumbent on an officer, seeking to make an arrest, to disclose his official character, if not known to the offender."

If the appellant did not know that the prohibition agents were officers, and was not charged with knowledge of that fact, there was not evidence of one of the essential elements of the crime to sustain the verdict. Even though the appellant was sitting at the roll top desk when the two jugs of liquor, contained in cartons,

were carried out to the automobile in front, there was nothing to indicate to her what was going on. One of the officers testified:

"I could not state that appellant saw the jugs of liquor taken out of the building or that were placed in the hallway. The jugs that were taken out to the car were in cartons and the jugs nor their contents could not be seen."

While the agent in front was standing near the soda fountain talking with Judd Layton, that officer reached in his pocket, got his badge and showed it to Mr. Layton. He testified, however, "I couldn't say whether she [appellant] saw my badge or not." It cannot be concluded, then, that the appellant was, by anything that occurred in the front of the building, charged with knowledge that the men who had entered the store were officers. Nothing took place in the prescription room or near the stairway that would bring knowledge to the appellant that the men were officers. One of the agents testified:

"George Bandy was in the prescription room at the time Claggett arrested him and at the time we told him we were Federal officers and what was said there was in subdued tone. There was nothing said there that would convey knowledge to any other persons in the building of what was going on, but I believe I would have had a hunch. There was nothing said there that might indicate to others in the room that Bandy was under arrest or being arrested."

This officer further testified:

"At the time I had my officer's badge in my pocket and had no badge on my coat or person where anybody could see it; neither did any of the other members of the raiding party have on a badge or anything to indicate that they were officers."

From this testimony, it can only be concluded that the appellant did not know and was not charged with

knowledge that the Federal prohibition agents were officers, or that her father had been placed under arrest. The first knowledge that she had that anything unusual was going on was when her attention was attracted by the fact that the Federal prohibition agent had prevented her father from going upstairs, and in such a manner that she undoubtedly believed her father was being rudely handled for some purpose. Acting upon the impulse of the moment, she immediately went to her father's aid.

For the purpose of this case, it must be assumed that she there made the statement that the officers say she did, but it must be remembered that she was a young girl eighteen years of age, going to the aid of her father, whom she believed was being mistreated, and with no knowledge at that time that he was arrested or in the custody of an officer or officers. The fact that she said, if she did say, "If you arrest my daddy, I'll kill you," when taken into consideration with the testimony of the Federal agents, is not sufficient to take the case to the jury as to whether she had knowledge or was charged with knowledge that she was resisting an officer or officers. There was not sufficient evidence to sustain the conviction, and the trial court should have granted either the motion to withdraw count two from the jury, or the motion in arrest of judgment.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the proceeding.

TOLMAN, C. J., PARKER, and MITCHELL, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. The testimony as to what appellant said was ample to show that she knew that an arrest had been, or was about to be, made, by persons authorized to make the arrest; officers of the law.

The evidence was not only sufficient to justify the conviction for this misdemeanor under our statute, but the jury could hardly have done otherwise.

The verdict should be sustained and the judgment affirmed.