[No. 23235. Department Two. December 28, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. GLADYS ROBERTS, *Appellant*.[1]

*E. K. Brown*, for appellant.
*Spencer Short*, for respondent.

MAIN, J.—Walter Roberts and his wife Gladys Roberts were charged, by information, with wilfully

[1]Reported in 6 P. (2d) 407.

and unlawfully, and by means of threats, force and violence, attempting to prevent two police officers from performing a duty imposed upon them by law. The trial resulted in a verdict of not guilty as to Walter Roberts and a verdict of guilty as to Gladys Roberts. Motion for new trial being made and overruled, Mrs. Roberts appeals from the judgment and sentence.

The facts, as they appear from the evidence of the state, and which are essential to be stated, may be summarized as follows: Mr. and Mrs. Roberts resided in the city of Ellensburg in a house, the living room of which was on the west and to the front. Back of this was the dining room, and back of that a kitchen. At the extreme rear of the house was the bathroom, and it was entered through a door from the kitchen. The upper part of the front door which opened into the living room was glass. There was a door from the living room into the dining room, and from that room into the kitchen.

On March 24, 1930, at about nine o'clock P. M., C. A. Love, a police officer of the city of Ellensburg, and Neal Cooper, the chief of police, went to the home of Mr. and Mrs. Roberts with a search warrant for the purpose of making a search for intoxicating. liquors. Love had the search warrant and went to the front door. Cooper went to the back door.

When Love approached the front door and looked through the glass, he saw Mr. and Mrs. Roberts sitting on a couch in the living room, and one John Edgett sitting in a chair in the same room. When he rapped on the door, Mrs. Roberts got up and went to the opening between the living room and the dining room. Mr. Roberts went to the front door, and, as he approached the door, he said in a loud voice: "It's Chi Love." Mrs. Roberts immediately passed into the dining room and to the back part of the house. Love exhibited the

search warrant in front of the glass of the door, and, Roberts not opening the door as readily as he desired, Love forced the door open and entered. He handed the search warrant to Roberts, who demanded that it be read, and he said: "Read it yourself," and immediately proceeded to the rear of the house in the direction in which Mrs. Roberts had gone.

When he got to the bathroom, the door was locked, and he forced that and entered. Mrs. Roberts was then in the act of emptying, or had just previously emptied, some intoxicating liquor into the toilet bowl. From the time that Love saw Mrs. Roberts standing in the doorway between the dining room and the living room, he did not see her again until in the bathroom. As Love went to the bathroom, Mr. Roberts followed him and attempted to detain him. Love entered the bathroom, Mrs. Roberts drew a gun on him and said she would "blow me up." Love attempted to take the gun from Mrs. Roberts, and Mr. Roberts came to her assistance.

While this was going on, Cooper passed around the house to the front door, came in and entered the bathroom. Love and Cooper say that the gun was loaded, and Mr. and Mrs. Roberts testified that it was not. Love says that Mrs. Roberts snapped the gun at him, and this she denied. The testimony of Love and Cooper is directly disputed in most, if not all, material respects by that of Mr. and Mrs. Roberts, and by Edgett, in so far as he had knowledge.

At the close of the state's case in chief, the appellant moved that the court direct the jury to return a verdict of not guilty as to her, and this motion was denied. One of the grounds of the motion was that the information charged that both the officers, Love and Cooper, had the search warrant and were resisted,

whereas the evidence showed that Love only had the search warrant, and that Love only was resisted.

Even though the information charged that both officers had the search warrant and the evidence showed that only one of them had it, this would furnish no reason for directing a verdict. The part of the information which said that both officers had the search warrant and both were resisted, may be disregarded as mere surplusage. *State v. Fetterly,* 33 Wash. 599, 74 Pac. 810.

■ The next question is whether the information was based upon Rem. Comp. Stat., § 2331, or upon §§ 2366 or 2672. Section 2331 provides that every person who, by means of any threats, force or violence, shall attempt to deter or prevent any executive or administrative officer from performing any duty imposed upon him by law, shall be guilty of a gross misdemeanor. Sections 2366 and 2672 use the word "wilful," which does not appear in section 2331. Aside from the use of this word, the information is substantially in the language of § 2331, and it seems reasonably plain that the charge and prosecution were based upon that statute. *State v. Heimbigner,* 137 Wash. 409, 242 Pac. 654.

However, whether the prosecution was based upon § 2331, or either one of the two statutes mentioned, is not very material, because the court, in submitting the case to the jury, told them that, before they could find the appellant guilty, they must find that she "wilfully and unlawfully," by means of threats, force and violence, attempted to deter or prevent the officers from making the search.

■ The next question is whether the evidence was such that the jury had a right to find that appellant knew that the officers were there with a search warrant for the purpose of making a search, or whether appel-

lant had reason to know from all the attending circumstances that they were there for that purpose. In *Olympia v. Culp*, 136 Wash. 374, 240 Pac. 360, it was held that officers acting under a search warrant could lawfully detain and search any person found on the premises when there was reasonable cause to believe that such person had upon his person the articles searched for. It was there said:

"Officers making a search of premises under a search warrant may lawfully detain all persons found therein until the search is concluded. Any other rule would frustrate the purposes of the search; the officers would be compelled to stand idly by while the articles for which the search was instituted were carried away. The law is not so impotent as this. The officers may, under a warrant to search the premises, lawfully search any one found therein whom they have reasonable cause to believe has the articles for which the search is instituted upon his person."

The appellant testified that she knew Love was a police officer, and that, if she had heard her husband's statement, "It's Chi Love," which she says she did not, she would have known that "the police were there."

The question is finally reduced to whether the jury had a right to find from the evidence that the appellant was charged with knowledge that the officers were there for making a search and had a warrant for doing so. The court instructed the jury that, unless the appellant knew that the officers had a search warrant, they could not find her guilty, and that the mere presence of the officers, even though the appellant knew them to be such, was not sufficient. In defining knowledge, the jury were told that, if the appellant knew, or had reason to know from the attending circumstances then present, that the officers had a search war-

rant, this would be sufficient to charge her with knowledge thereof.

Taking into consideration the facts as supported by the evidence offered by the state, and the holding in the case of *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360, already referred to, we think the jury had a right to find that the appellant was charged with notice that the search was being made under a warrant therefor. It does not appear that the appellant's movements and conduct can be reconciled with any other theory. The facts in this case are materially different from those in the case of *State v. Bandy,* 164 Wash. 216, 2 P. (2d) 748, where it was held that there was not sufficient evidence to sustain a conviction, and that case, therefore, is not controlling. It was, however, recognized in that case that, if the facts had been such as to charge the appellant with knowledge of the fact that the prohibition agents were officers and her father had been arrested by them, the question would have been one for the jury.

If the authorities cited by the appellant go to the extent of holding that, where a search warrant has been properly served upon the husband when he and his wife are in the same house, it must also be served upon the wife before making the search, and that reasonable ground to believe that a search is being made upon a warrant cannot be imputed to the wife or any other member of the household, then we decline to follow them. But we do not understand from a reading of the decisions cited that they go that far.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.