**FILED**

**DECEMBER 10, 2019**

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35723-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYLON KEASON KOLB, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| KALEN WARREN DUNLAP, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kalen Dunlap appeals his convictions for fourth degree assault and resisting arrest, arguing that insufficient evidence supports the latter conviction. We affirm the convictions and remand.

## FACTS

Dunlap, a college student in Ellensburg, got into a confrontation with a drunken man inside a bar. The two men went outside and a fight ensued; Dunlap's cousin assisted him in the altercation. When the victim was knocked to the ground, a passing Ellensburg Police Department Officer, Eric Holmes, saw Dunlap kick the downed man in the face.

Holmes turned on his lights, pulled his car up to the scene, got out of the vehicle, and called for assistance.

Dunlap kicked the man in the torso and ran after his cousin who had already fled. Holmes yelled "hey" and started running after them. Giving up after a short pursuit, Holmes returned to aid the victim and told dispatch about the two fleeing suspects. Corporal Clifford Clayton soon spotted the two a short distance away and pursued Dunlap with his car when the two men split up. Clayton repeatedly told Dunlap to stop before Dunlap finally stopped running and was taken into custody.

Dunlap and his cousin were each charged with second degree assault and resisting arrest. Their cases proceeded to a joint jury trial. The prosecutor argued the resisting charge on a theory that Dunlap's flight constituted resisting arrest and that he was told repeatedly to stop. The jury convicted both men of resisting arrest, but did not reach a verdict on the assault charges. Mr. Dunlap waived his right to a jury trial and his retrial was to the bench. The court found Mr. Dunlap guilty of the inferior degree crime of fourth degree assault.

Counsel for Mr. Dunlap also moved to vacate the jury verdict, arguing that the flight from Officer Holmes was not flight from an "arrest." The trial court denied the motion. The court then imposed concurrent 30 day sentences for the two offenses and also required payment of a booking fee and the criminal filing fee.

Mr. Dunlap timely appealed to this court. A panel considered his appeal without hearing argument.

ANALYSIS

Mr. Dunlap primarily argues that the evidence did not support the resisting arrest count; he also argues that the court erred in imposing the two noted financial obligations. We address the questions in the order presented.

*Sufficiency of the Evidence*

The focus of Mr. Dunlap's argument is a contention that there was no evidence as to what type of "restraint" he was fleeing from. Properly viewed, the evidence supported the jury's verdict.

Review of this contention is in accord with long settled standards. Evidence is sufficient to support a verdict if the trier-of-fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A person commits the crime of resisting arrest if he "intentionally prevents or attempts to prevent a peace officer from lawfully arresting him." RCW 9A.76.040(1). "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010. In Washington, a person is under arrest "when, by a show of authority, his freedom of movement is restrained." *State v. Holeman*, 103 Wn.2d 426, 428, 693 P.2d 89 (1985) (citing *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). However, the failure of a person to submit to the show of authority does not factor into the *Mendenhall* test. *State v. Young*, 135 Wn.2d 498, 957 P.2d 681 (1998). Nor does there need to be a pronouncement that an arrest is being made. "A rational trier of fact could find that when a law enforcement officer identified himself as 'police,' told Calvin to get on the ground, and started to place handcuffs on him, Calvin knew he was under arrest." *State v. Calvin*, 176 Wn. App. 1, 13, 316 P.3d 496 (2013).

This court once observed that a person "may resist arrest by various types of conduct." *State v. Williams*, 29 Wn. App. 86, 92, 627 P.2d 581 (1981). The question presented here is whether fleeing from an officer who observed the defendant commit a felony is resisting an arrest. We believe the evidence permitted the jury to conclude that the defendant resisted the officer's attempt to arrest him by fleeing.

4

We have no cases squarely on point.[1] Flight is frequently associated with the offense of obstructing a public servant. *E.g.*, *State v. Little*, 116 Wn.2d 488, 496, 806 P.2d 749 (1991) (plurality opinion); *State v. Hudson*, 56 Wn. App. 490, 497, 784 P.2d 533 (1990). Nonetheless, flight is not evidence solely of that crime. As a matter of common sense, offenders flee from a crime to avoid both detection and arrest. Still, one cannot intentionally resist an arrest unless the officer is on scene attempting to effectuate an arrest.

We believe that the facts of this case allowed the jury to make that determination. Officer Holmes was passing by when he observed the assault and took immediate action to intervene—turning on his siren and lights, driving his car to the scene, and exiting the car. Upon seeing the officer's intervention, Dunlap took off and Holmes briefly chased him on foot before turning his attention to the victim. The evidence allowed the jury to conclude that Dunlap intentionally fled the officer. The question then becomes whether he was fleeing an arrest. Viewing the evidence in a light most favorable to the State, we believe the jury could properly reach that conclusion.

---

[1] In a somewhat analogous circumstance, the court once held there was insufficient evidence to support a conviction for knowingly resisting an officer due to lack of knowledge of the undercover officer's identity. *State v. Bandy*, 164 Wash. 216, 219, 2 P.2d 748 (1931). This offense appears to be a forerunner of the obstructing a public servant law rather than resisting arrest. *Bandy* identified the elements as "knowingly resist by force or violence any executive or administrative officer in the performance of his duty." *Id.* (citing REM. COMP. STAT. § 2331).

Dunlap committed the assault in the officer's presence, provoking an immediate response from Holmes. Dunlap did not begin fleeing until aware of the officer's intervention. Rather than provide immediate aid to the victim, Holmes initially pursued Dunlap before attending to the victim. A reasonable person in Dunlap's shoes would understand that the officer's initial foray was designed to apprehend him rather than ascertain the victim's condition and investigate the attack. If there was any question, the ensuing pursuit by Corporal Clayton, accompanied by his repeated commands to stop, left no doubt that police were attempting to arrest Dunlap.[2]

On this evidence, we believe the jury could find that the police were attempting to arrest Dunlap and that he fled to avoid the arrest. Officer Holmes had probable cause to arrest Dunlap for assault after seeing the man deliver two kicks to the body of the victim; he moved immediately to seize Dunlap and then sought assistance from his fellow officers to achieve that end. Mr. Dunlap knew that he had assaulted a man in front of an officer and that the officer's first action was to attempt to apprehend him. From these facts, a jury could conclude that Mr. Dunlap was intentionally avoiding police efforts to arrest him.

---

[2] Although Mr. Dunlap attempts to confine the flight evidence to Holmes' testimony, citing to a motion response filed by a second prosecutor prior to sentencing, the trial prosecutor argued the flight and Corporal Clayton's commands to stop to the jury as part of the basis for the resisting charge. Report of Proceedings at 411.

6

On different facts, such as Mr. Dunlap fleeing the scene before the officer had observed the attack, a jury might not have been able to conclude he was motivated by the desire to avoid arrest. But here, that was a permissible conclusion. Accordingly, the jury's verdict was supported by sufficient evidence.

The conviction for resisting arrest is affirmed.

*Financial Obligations*

Mr. Dunlap also argues that the trial court erred by imposing the two discretionary financial obligations without first conducting a proper inquiry into his ability to pay them. The State concedes the error and requests that we strike the obligations.

We accept the concession in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). There the Washington Supreme Court discussed the adequacy of the inquiry that trial courts must make before imposing discretionary financial obligations. The court also ruled that statutory amendments[3] concerning the ability of trial courts to impose financial obligations were retroactive and applied to all sentencings that were not final on the effective date of the new legislation, June 7, 2018.

We direct the trial court to strike the filing fee and the sheriff's service fee. The judgment otherwise is affirmed.

---

[3] *See* LAWS OF 2018, ch. 269.

No. 35723-6-III
*State v. Dunlap*

Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Maxa, J.[4]

---

[4] Judge Bradley Maxa is a Division II judge serving with the Court of Appeals, Division III, under CAR 21(a).

8

No. 35723-6-III

PENNELL, A.C.J. (dissenting) — Deference to a jury's guilty verdict is appropriate only when the State's evidence is sufficient to support a conviction. Here, it is not.

The facts are largely undisputed. After Officer Eric Holmes of the Ellensburg Police Department saw Kalen Dunlap engaged in a fight he turned on his patrol car's lights and siren. As Mr. Dunlap began running away Officer Holmes yelled "'hey'" and began a foot pursuit. Clerk's Papers at 76. The chase was then taken up by Corporal Clifford Clayton. Corporal Clayton also had his lights and siren running. His patrol car recorded his interactions with Mr. Dunlap.

According to the video recording, when Corporal Clayton spotted Mr. Dunlap he yelled, "Stop, police, right there, stop!" Ex. 11, at 2 min, 11 sec. Mr. Dunlap continued to run for 20 seconds. Corporal Clayton then yelled, "Stop right there!" *Id.* at 2 min., 30 sec. Mr. Dunlap continued to run, this time for another 20 seconds. Finally, Corporal Clayton yelled, "Stop right there! Put your hands up, get on the ground!" *Id.* at 2 min., 51 sec. At this point, Mr. Dunlap complied and was taken into custody without any indication of resistance in the video or from the officers over the radio. Mr. Dunlap complied with the officers' subsequent commands and was responsive to their questioning.

No. 35723-6-III
*State v. Dunlap* (Dissent)

Given these facts, the question is whether Mr. Dunlap was subject to an attempted arrest prior to Corporal Clayton's final demand that resulted in Mr. Dunlap's compliance. There was unquestionably an attempted seizure, but that is not enough. "[T]he resisting arrest statute does not even purport to address detentions or other seizures short of an arrest." *State v. D.E.D.*, 200 Wn. App. 484, 496, 402 P.3d 851 (2017). To gain a conviction for resisting arrest under RCW 9A.76.040(1), the State must prove Mr. Dunlap knew the police were attempting an arrest, not just an investigative detention or *Terry*[1] stop. *See State v. Bandy*, 164 Wash. 216, 219, 2 P.2d 748 (1931); *State v. Calvin*, 176 Wn. App. 1, 13, 316 P.3d 496 (2013).

An arrest occurs when an officer does or says something that can be objectively understood as manifesting an intent to arrest. *State v. Patton*, 167 Wn.2d 379, 387, 219 P.3d 651 (2009). The officer's subjective intent is not relevant. *State v. O'Neill*, 148 Wn.2d 564, 575, 62 P.3d 489 (2003). Nor is the line between a stop and arrest drawn by probable cause. *State v. Lorenz*, 152 Wn.2d 22, 37, 93 P.3d 133 (2004). Instead, an arrest turns on what a reasonable person in the position of the defendant would have understood about the nature of the police contact. *See id.* ("[A] reasonable person in [the defendant's] position would have to believe that [they were] in police custody with the loss of freedom

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

2

associated with a formal arrest."); *see also State v. Rivard*, 131 Wn.2d 63, 75, 929 P.2d

413 (1997).

Here, Mr. Dunlap's noncompliance was preceded by a law enforcement pursuit

and instructions to stop, accompanied by lights and siren. These circumstances were

certainly sufficient to communicate an intent to detain Mr. Dunlap for purposes of a

*Terry* stop. But our case law does not support interpreting the officer's words and actions

as communicating an intent to curtail Mr. Dunlap's liberty to the extent of an arrest. *See,*

*e.g., Rivard*, 131 Wn.2d at 76 (reading of *Miranda*[2] rights insufficient); *State v. Radka*,

120 Wn. App. 43, 50, 83 P.3d 1038 (2004) (totality of circumstances not indicative of

custodial arrest even though defendant was told he was under arrest and placed in a patrol

car); *State v. Lyons*, 85 Wn. App. 268, 270-71, 932 P.2d 188 (1997) (physical restraint

and statement, "'You're under arrest'" insufficient to transform an investigative

detention into an arrest); *State v. Gardner*, 28 Wn. App. 721, 724-25, 727-28, 626 P.2d

56 (1981) (physical apprehension and transport to crime scene insufficient to transform

an investigative stop into an arrest). In fact, had Mr. Dunlap complied with the initial

instructions to stop and then been questioned without *Miranda* we would likely uphold

the use of his statements at trial on the basis that they were part of an investigative

detention, not an arrest. *See, e.g., State v. Ferguson*, 76 Wn. App. 560, 566-68, 886 P.2d

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

1164 (1995); *State v. Walton*, 67 Wn. App. 127, 129-31, 834 P.2d 624 (1992); *State v. Wilkinson*, 56 Wn. App. 812, 819-20, 785 P.2d 1139 (1990); *State v. Marshall*, 47 Wn. App. 322, 324-26, 737 P.2d 265 (1987).

Our prior decision in *Calvin* provides a helpful contrast to Mr. Dunlap's circumstances. The interaction between Donald Calvin and a law enforcement officer began as a consensual encounter. *Calvin*, 176 Wn. App. at 8. But things escalated when Mr. Calvin became belligerent and refused instructions to stand back. Mr. Calvin repeatedly approached the officer in an aggressive manner, even after the officer deployed pepper spray and yelled at Mr. Calvin to get back and go to the ground. *Id*. Eventually, the officer struck Mr. Calvin with his baton and Mr. Calvin began to walk away. *Id*. At this point, the officer decided to initiate an arrest for assault and yelled, "'Police, get on the ground.'" *Id*. The officer then grabbed Mr. Calvin's left arm and took him to the ground. *Id*. But Mr. Calvin still was not compliant and would not yield his right arm to handcuffs. *Id*. at 8-9. The officer told Mr. Calvin to quit resisting, but Mr. Calvin struggled for approximately a minute before he was fully secured. *Id*. Mr. Calvin was then arrested and charged with resisting. *Id*.

Division One of our court upheld Mr. Calvin's resisting conviction against a sufficiency challenge. Although Mr. Calvin had not been told he was under arrest, we held the law enforcement officer sufficiently manifested intent to arrest by identifying himself as police, telling Mr. Calvin to get to the ground, and initiating the process of

4

handcuffing. *Id*. at 12-13. Notably, *Calvin* did not hold that there was an arrest when the law enforcement officer merely told Mr. Calvin to stand back or when the officer deployed pepper spray and a police baton. *Id*. Instead, the show of force against Mr. Calvin that rose to the level of an arrest occurred when Mr. Calvin was taken to the ground and the officer attempted to place Mr. Calvin in handcuffs. *Id*.

Unlike Mr. Calvin, Mr. Dunlap was never subjected to physical force prior to noncompliance. He failed to stop when told to do so; but once Corporal Clayton made apparent that he was escalating the nature of the encounter by ordering Mr. Dunlap to put his hands up and to get on the ground, Mr. Dunlap complied. Mr. Dunlap's initial failure to comply with instructions was a quintessential example of obstruction. *See State v. Little*, 116 Wn.2d 488, 496, 806 P.2d 749 (1991) (The defendant's "flight from the police constituted obstruction of a police officer in the exercise of [their] official duties."). But it did not qualify as resisting arrest. I therefore dissent.

Pennell, A.C.J.